STATE OF NEBRASKA, APPELLANT, V. CHERYL NEELY, APPELLEE.

462 N.W.2d 105

Filed November 2, 1990.    No. 90-696.

Charles W. Campbell, York County Attorney, for appellant.

James H. Truell, York County Public Defender, for appellee.

WHITE, J.

This is an appeal pursuant to Neb. Rev. Stat. § 29-824 (Reissue 1989) to one judge of this court, challenging the district court's order to suppress evidence found in the defendant's automobile.

Defendant, Cheryl Neely, is currently charged with attempted burglary, possession of burglar's tools, theft, and being a felon in possession of a firearm, and as a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1989). She was arrested on November 2, 1989, as she left the Super 8 Motel in York, Nebraska. Neely was identified by the night clerk as being at the Super 8 Motel at approximately 3:30 a.m. He observed her walk through the lobby and come to a stop in front of room 207. He testified that she stood in front of the door with her hands near the doorknob for a period of time without opening the door or calling out to the occupants of the room. She then turned and looked in the general direction of the clerk and exited the motel. The clerk testified that Neely was not registered at the motel that evening and that two men were registered in room 207.

The clerk testified that he was aware that the Super 8 Motel had been burglarized in April and December 1988. He stated that in December 1988 he saw a black female enter the motel through the front door and go up the stairs. He described her as wearing glasses and dark clothing and being of medium height and slender build. He testified that a wallet containing cash was taken from one of the rooms that night and was later recovered empty in another room. He testified that the woman he saw enter the motel in December 1988 was the same woman who entered the motel on November 2, 1989.

As part of the investigation following the 1988 thefts from the Super 8 Motel, the York Police Department had received information from the Kearney Police Department regarding similar motel room thefts that had occurred in Kearney and elsewhere in Nebraska and Colorado. The bulletin received from the Kearney Police Department described a suspect similar to Neely. Additionally, on April 29, 1989, the York Police Department received a Teletype from the Hays, Kansas, police department notifying them of similar motel burglaries at

the Super 8 Motel in Hays, Kansas. The Teletype also described a suspect similar to Neely.

After the clerk observed Neely in the motel on November 2, he called the York Police Department and informed them that he had an individual "trying to enter a room." He did not report anything stolen. Shortly after the call from the clerk, York Police Officers Wolfe and Cobb were dispatched to the Super 8 Motel. As Officer Wolfe approached the motel in his patrol car, he observed a black female with glasses driving a vehicle with Colorado license plates exiting the service road leading from the Super 8 Motel. He testified that he knew about similar burglaries from other jurisdictions where the suspect was a black female wearing dark clothing and glasses and driving a vehicle with Colorado license plates.

Officer Cobb contacted the clerk inside the motel, who described Neely. Officer Cobb then instructed Wolfe to stop the vehicle. The driver of the vehicle identified herself as Cheryl Neely and the passenger, a black male, stated his name was Lee Turner, but could not provide any identification. Officer Wolfe testified that when he stopped Neely he saw only a soda bottle, other litter, and some baggage scattered in the interior of the car.

Officer Cobb instructed Wolfe to place Neely under arrest. The testimony is in conflict as to whether she was initially charged with only criminal trespass or with both criminal trespass and attempted burglary. Wolfe took Neely back to the Super 8 Motel, where the desk clerk identified her as the person he had seen in the motel that night. Wolfe then transported her to the police station for booking. Wolfe testified that both he and Cobb were aware that nothing had been reported stolen from the Super 8 Motel that night.

Officer Wolfe impounded Neely's vehicle because the passenger accompanying her did not have a driver's license. The vehicle was towed to the police department and then searched by Officer Cobb approximately 20 minutes after the vehicle arrived at the police station. Cobb did not obtain a warrant to search the vehicle or any containers found within the vehicle.

Officer Cobb searched the interior passenger compartment of the car as well as the trunk. In the trunk he opened and searched a brown suitcase that belonged to Neely. Inside the

suitcase he found 22 "do not disturb" signs and identification belonging to a Sarah Hazel Francis. He also opened and searched a camera case, where he found a 9-millimeter handgun and some ammunition. Officer Cobb testified that Neely identified the camera case as hers while she was being questioned at the police station. After the search Neely's belongings were placed in the locked inventory room of the York County Jail.

Following Neely's preliminary hearing, Officer Cobb again searched her suitcase as well as her purse while both items were located in the jail's locked inventory room. He did not have a warrant to search either the suitcase or the purse. He testified that he searched the suitcase in order to seize the "do not disturb" signs located inside the suitcase in preparation for trial.

Officers Wolfe's and Cobb's testimony concerning the purpose for the search of Neely's vehicle is contradictory. Officer Wolfe testified at both the preliminary and suppression hearings that he impounded the vehicle because Neely's passenger did not have a driver's license. He stated that the vehicle was the police department's responsibility and was searched in order to compile an inventory of its contents. He referred to the search as an inventory search on at least one occasion. Officer Cobb testified that the initial purpose of the search was to inventory the contents of the car. Cobb himself compiled the inventory list, but he also stated that the search was incident to arrest and he was looking for criminal evidence while conducting the search. The State did not present any evidence as to what were the standard inventory procedures used by the York Police Department.

Neely sought to suppress all the evidence found inside the suitcase and the camera case, as well as any statements made by her as a result of the search. She claimed the warrantless search of the suitcase and camera case violated her fourth amendment rights. Her initial motion to suppress the evidence was overruled by the district court on July 25, 1990. Neely then moved to suppress the evidence found in the second search of the suitcase conducted while the suitcase was held in the jail inventory room.

The district court then sustained both motions, reversing the previous ruling. The court based its decision on the recent U.S. Supreme Court case of *Florida v. Wells*, ____ U.S. ____, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990), having found that the prosecution failed to present sufficient evidence on the existence of standard inventory procedures used by the York Police Department.

In its appeal for summary review, the State has assigned as error the following: First, the district court erred in ruling that the search of the vehicle was an inventory search governed by the rule in *Florida v. Wells, supra*; second, the court erred by failing to uphold the search as justified under the "automobile exception" to the warrant requirement; third, the court erred in ruling that the defendant had an expectation of privacy in her property held in the inventory lockup of the York County Jail; and last, the court erred in suppressing all the evidence found from the search of the suitcase and the camera case, as well as any statements made by the defendant.

The issue in this case is whether Neely's fourth amendment rights were violated when Officer Cobb conducted the warrantless search of her suitcase and camera case following her arrest.

The fourth amendment to the U.S. Constitution protects people against unreasonable searches and seizures by the government. U.S. Const. amend. IV. The Nebraska Constitution has a similar provision. See Neb. Const. art. I, § 7. The fourth amendment was made applicable to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Before government action constitutes a search under the fourth amendment, a person must exhibit a subjective expectation of privacy in the thing to be searched. *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring). In addition, the expectation of privacy must be both reasonable and recognized by society. *Id.* It is obvious that Neely had a reasonable and legitimate expectation of privacy in her luggage. Officer Cobb's actions constituted a search under the fourth amendment.

Searches under the fourth amendment are unlawful only if unreasonable. A criminal search conducted pursuant to a

warrant supported by probable cause is usually considered reasonable. However, the U.S. Supreme Court has created several categories of searches considered reasonable under the fourth amendment though conducted without a warrant. I must decide if this warrantless search was reasonable and therefore not violative of the fourth amendment. Since the testimony and the assigned errors in the State's brief are conflicting as to which type of search this was, I will consider the legality of the search under three recognized exceptions to the warrant requirement: the search incident to arrest exception, the automobile exception, and the inventory exception.

## THE SEARCH INCIDENT TO ARREST EXCEPTION

In *Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), the Supreme Court held that it is reasonable under the fourth amendment for an officer to conduct a warrantless search of an arrested person in order to remove weapons that might endanger the officer or aid the person's escape. The arresting officer may search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. In addition, the officer may search for and seize any evidence within the arrestee's immediate control, i.e., the area in which the person may gain possession of a weapon or evidence. This would also prevent the arrestee from reaching out for a weapon or other object. This is known as the "wingspan" rule.

In *New York v. Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), the Supreme Court expanded the *Chimel* rule to include the passenger area of the arrested person's automobile. The Court held that when an officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile. The search may include any open or closed containers within the passenger compartment. Again, the rationale for this rule was to prevent the vehicle's occupant from obtaining weapons from the inside of the vehicle or from possibly destroying evidence. The Court in *United States v. Edwards,* 415 U.S. 800, 94 S. Ct. 1234, 39 L.

Ed. 2d 771 (1974), stated that searches and seizures that could be made at the time of arrest may legally be conducted later, when the arrestee arrives at the police station.

Officer Cobb testified in the July 3, 1990, hearing on the motion to suppress that he searched the car for inventory purposes, but also considered the search incident to arrest and was looking for criminal evidence. Assuming this was a search of the vehicle incident to Neely's arrest conducted at the police station as permitted under *Edwards*, Officer Cobb was not justified in conducting the search without a warrant because Neely's suitcase and camera case were not located in the passenger compartment of the vehicle. The Court's decision in *New York v. Belton* extended the rationale of *Chimel* to include closed containers located in the passenger area of a vehicle. Presumably, an occupant of a vehicle could reach a container located in the passenger compartment in order to obtain a weapon or destroy evidence. It was not possible for Neely to reach the gun found in the camera case or to destroy any of the evidence found in her suitcase because both were locked in the trunk of the vehicle at the time of her arrest. The second search of her suitcase was conducted several days after her arrest, while she was incarcerated. Certainly, she did not have access to her belongings at that time. Therefore, the rationale of the exception to the warrant requirement in *Chimel* and *New York v. Belton* does not apply. This warrantless search was not justified as incident to Neely's arrest and was therefore unreasonable under the fourth amendment unless another exception applies.

## THE AUTOMOBILE EXCEPTION

In *Carroll v. United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), the Supreme Court held that automobiles and other mobile vehicles may be searched without a warrant, provided there is probable cause to believe the vehicle contains contraband. The Court drew a distinction between the warrantless search of a house and the search of a ship or automobile, stating that it is not practical to secure a warrant because the vehicle may quickly be moved. The Court specified that the officer must have probable cause to believe the

automobile he stops contains contraband. In *Chambers v. Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), the Court expanded its reasoning in *Carroll* to uphold the warrantless search of an automobile at the police station. The Court repeated the "moving auto" rationale in Carroll and stated that if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car must be seized and held until a warrant can be obtained. The Court stated that

> [f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

*Chambers, supra* at 399 U.S. at 52.

In 1971, the Court again considered the warrantless auto search issue in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). In *Coolidge,* the police conducted a search of the defendant's automobile at the police station pursuant to a defective warrant. Because the warrant had not been issued by a neutral and detached magistrate, the Court considered the search to be conducted without a warrant. The Court paraphrased *Chambers* as holding that where there is probable cause, the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained, "exigent circumstances" justify the warrantless search. *Coolidge, supra.* The Court then disallowed the search under the *Carroll/Chambers* rationale because the police had known for some time that the car was involved in the crime, the car was regularly parked in the driveway of the suspect's house, and the objects sought in the car were neither dangerous nor stolen. *Coolidge, supra.* The Court stated that since no circumstances existed to justify the warrantless search because the vehicle was parked in the driveway, it did not contain contraband or dangerous weapons, and the suspect was not fleeing the area, the "automobile exception" to the warrant requirement was irrelevant.

The Court specifically addressed the issue of whether closed

containers located in automobiles may be searched without a warrant in *United States v. Chadwick*, 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977), and *Arkansas v. Sanders*, 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979). In *Chadwick*, the police had probable cause to believe a footlocker contained drugs, seized the footlocker after it had been placed in the trunk of an automobile, and later searched the footlocker without a warrant. The government contended that the rationale supporting the warrantless search of automobiles applies to the warrantless search of luggage. The Court rejected this argument and stated that a person's expectation of privacy in luggage is much greater than in an automobile. The Court went on to say that since the footlocker was seized by the police and was not in danger of being removed from the vicinity, a valid search warrant could easily have been obtained prior to the search. *Chadwick, supra.*

In *Arkansas v. Sanders, supra,* the Court decided the same issue involving the warrantless search of an unlocked suitcase found in the trunk of a cab in which the defendant had been riding at the time of his arrest. The Court held that once the luggage was taken from the cab, the police could have held it until a search warrant was obtained. Therefore, there were no exigent circumstances mandating an immediate search. *Id. Sanders* was later limited in *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), to the specific situation in which there was probable cause to search a particular container but not probable cause to search the vehicle generally.

In *United States v. Ross, supra,* the police arrested an individual believed to be a narcotics dealer, and at the time of arrest opened the car's trunk and found a closed paper bag which contained heroin. An officer then drove the car to the station, where he searched it again without a warrant and found a leather pouch containing cash. The issue in *Ross* was whether, in the course of a search of a vehicle under the automobile exception, the police are entitled to search containers found within the vehicle. The Court began its analysis by reiterating the rule in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), but stated specifically that the exception to the warrant requirement established in *Carroll* applied only

to vehicle searches that are supported by probable cause. *Ross, supra.* The Court distinguished its holdings in *Chadwick, supra,* and *Sanders, supra,* because the police in *Ross* had probable cause to search the entire vehicle, while in *Chadwick* and *Sanders* there was probable cause to search only the container. The Court then held that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. The Court rejected any distinction between trunks, glove compartments, or packages in the case of a vehicle search, and stated that such distinctions must give way to the interest in the prompt and efficient completion of the search, provided its purpose and scope have been precisely defined. *Ross, supra.*

In this case, the State claims that the search of the luggage in the trunk of Neely's automobile was justified under the automobile exception as expanded in *Ross.* The *Carroll* line of cases establishes an automobile exception to the warrant requirement, provided two criteria are met. First, the officer must have probable cause to believe the *vehicle* contains contraband. Probable cause has been defined in *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), as a practical, commonsense decision by a magistrate that, given all the circumstances, there is a fair probability that evidence of a crime will be found in a particular place. Second, there must be exigent circumstances justifying the warrantless search. In the case of an automobile, these circumstances consist of the mobility of the automobile and the possibility that the suspect may take himself and the evidence in the vehicle out of the jurisdiction before a warrant can be obtained.

The State has failed to meet the first criterion justifying warrantless automobile searches. Officers Wolfe and Cobb did not have probable cause to search Neely's vehicle. They had probable cause to *arrest* Neely, given past information received from other jurisdictions and the eyewitness identification by the Super 8 Motel desk clerk. But they also knew, based on the clerk's story, that nothing had been stolen from the Super 8 Motel that night and that Neely had not been successful in breaking into a motel room. It was not reasonable to assume

that stolen property or burglary tools would be present in Neely's vehicle on the night she was arrested, because nothing was stolen from the motel, she did not enter a motel room, and the clerk did not see her use any type of object to effect entry. There was no "fair probability" under *Gates* that any evidence from the crime she allegedly committed that night would be concealed in her vehicle.

Additionally, the York Police Department's last information regarding Neely's alleged previous burglaries was in April 1989, 6 months before her arrest. It was not reasonable to believe that any contraband from previous crimes would still remain in her vehicle 6 months later. Presumably, burglars do not leave property stolen for profit undisposed of for 6 months. The State argued in the hearing on this appeal that Neely was engaged in a pattern of ongoing criminal activity and therefore it was possible that her vehicle contained evidence of past crimes. While that may be true, a mere possibility that her vehicle contained contraband from her previous activities does not satisfy the probable cause standard under *Gates*. Neely's vehicle was not identified as being used to conduct this alleged pattern of burglaries. The only information the police had regarding her vehicle was that a woman of her description suspected to have committed other motel burglaries drove a vehicle with Colorado license plates. The officer did not stop Neely because he believed her vehicle contained stolen property, but because he believed she was the person who attempted to enter a Super 8 Motel room that evening.

The *Carroll/Ross* line of cases also make it clear that the "exigent circumstances" permitting warrantless searches of automobiles are based on the inherent mobility of cars and other vehicles. Although the case law permits automobile searches to be conducted after the car has been brought to the station house, the Supreme Court has disallowed warrantless automobile searches when all rationale for searching the auto without a warrant under *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), has dissipated. See *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). In this case, the officers impounded the car because Neely's passenger was not licensed to drive, for safekeeping,

and to inventory its contents. Neely was placed in custody and taken to the station house before the vehicle arrived there. The car was safely stored at the station house both before and after the search. There was no possibility that she could have moved the vehicle out of the jurisdiction. Therefore, there was no reason the officers could not have obtained a warrant before searching the vehicle, or at least before opening Neely's luggage in the trunk.

The *Carroll/Ross* cases mandate that in order to search an automobile without a warrant, the officer must have probable cause to believe there is contraband *in the vehicle* and also must have a "moving auto." The officers in this case had no reasonable basis for believing that Neely's vehicle contained fruits of her alleged crime. When arrested, she was charged only with trespass and attempted burglary, neither of which involved the theft of goods or the use of dangerous weapons or burglary tools. Her alleged previous criminal activities were too remote in time to constitute a sufficient basis for probable cause that contraband was located in her vehicle at the time she was arrested. Despite the fact that *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), permits warrantless searches of all items located in a vehicle, the Court in *Ross* did not abandon the rationale for the automobile exception first laid out in *Carroll*. In *Ross*, the police did have probable cause to search the vehicle. The Court merely extended the scope of the search. Since the officers in this case had neither probable cause to search nor a "moving vehicle," they were not justified in searching the luggage in the trunk of Neely's vehicle without first obtaining a warrant. As Justice Stewart stated in *Coolidge v. New Hampshire, supra* at 403 U.S. at 461-62, "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." The State cannot later justify the warrantless search of Neely's vehicle under the automobile exception because she was fortuitously arrested while in her vehicle.

Any reliance on *United States v. Chadwick*, 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977), or *Arkansas v. Sanders*, 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), is misplaced

here. In both of those cases the police had probable cause to search the actual container rather than probable cause to search the vehicle. In this case, the officers had no idea until the search that the containers were in the vehicle.

## THE INVENTORY EXCEPTION

In *South Dakota v. Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976), the Supreme Court upheld a warrantless search of a car impounded for various parking violations. The police, following standard police procedure, inventoried the contents of the car and found marijuana in the glove compartment. The Court reversed the decision of the South Dakota Supreme Court and held that under the fourth amendment, inventories pursuant to standard police procedures are reasonable. The Court stated that the police were engaged in a caretaking search of the vehicle because the owner was not present to make arrangements for his vehicle and valuables were visible inside the car. The Court also stated that there was no evidence that the standard inventory procedure used by the police was a pretext for investigatory searches. *Id.*

In *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), the Court upheld a warrantless search of a backpack located in a van following impoundment of the vehicle after the driver had been arrested for drunk driving. The Court recognized that inventory searches were a well-defined exception to the warrant requirement of the fourth amendment. The Court then held that reasonable police regulations relating to inventory procedures administered in good faith satisfy the fourth amendment. The Court stated that the police may exercise discretion in searching as long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of criminal activity. *Bertine, supra.* Justice Blackmun, in his concurrence, emphasized the importance of having inventories conducted only pursuant to standardized police procedures. He stated that it is permissible for police officers to open closed containers during an inventory search only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle. *Bertine, supra* (Blackmun, J.,

concurring).

The Court's most recent statement concerning inventory searches is in *Florida v. Wells*, _____ U.S. _____, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990). In that case, Florida police arrested the driver of a vehicle for driving while intoxicated, impounded the vehicle, and conducted an inventory search of the car and a locked suitcase in the trunk. The police discovered marijuana during the search. The Florida police had no standard policy with respect to whether closed containers encountered during an inventory search should be opened. The Court held that because the Florida police had no policy with regard to opening closed containers during inventory searches, the search was not sufficiently regulated to satisfy the fourth amendment. The Court did state that inventory searches need not be conducted in a totally mechanical manner, and police officers may use their discretion in deciding to open containers whose contents cannot be determined from examining the exterior. *Wells, supra.*

In this case there is no evidence in the record of any standard inventory procedures used by the York Police Department. Assuming this search was conducted for inventory purposes, the search was not reasonable under the fourth amendment because it was not conducted pursuant to any standard inventory procedures used by the York police, as mandated in *Bertine* and *Wells*. It is unnecessary to determine whether those procedures must include a policy governing the opening of containers found in vehicles, because the State failed to present evidence that *any* search procedure was used by the York Police Department.

The district court based its suppression of the evidence found in Neely's luggage on *Florida v. Wells, supra*. While the court was correct in suppressing the evidence under *Wells* because the York Police Department failed to conduct the search pursuant to standard policy, it was mistaken in its determination that *Wells* conflicted with *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). *Ross* dealt with the scope of warrantless searches under the automobile exception, as discussed above. The search in *Ross* was not conducted for inventory purposes. The inventory and automobile exceptions

to the warrant requirement are separate and based on entirely different rationales. *Wells* is not in conflict with *Ross*.

Last, the State's claim that Neely has no expectation of privacy in her luggage while it remains in the jail's locked inventory is without merit. *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), the case on which the State relies for that proposition, dealt with the privacy rights of an inmate incarcerated in state prison. In this case, Neely has not yet been convicted of any offense, but is merely incarcerated while awaiting trial in the York County Jail. The holding in *Hudson, supra*, is inapplicable to her case. She had a legitimate expectation of privacy in her luggage while it was in her car, as well as while it is stored in the jail's inventory.

The order of the district court suppressing the evidence found in the suitcase and camera case during both the first search of the vehicle and the second search of the suitcase from the jail's inventory room is affirmed.

AFFIRMED.