STATE OF NEBRASKA, APPELLANT, V. HORACIO GONZALEZ, ALSO
KNOWN AS BENJAMIN, APPELLEE.

487 N.W.2d 567

Filed April 7, 1992.    No. A-91-1241.

Mark J. Young, Deputy Hall County Attorney, and Marcie A. Hagerty for appellant.

Roger D. Nunnenkamp, Deputy Hall County Public Defender, for appellee.

SIEVERS, Chief Judge.

The State appeals the order of the district court suppressing the fruits of a vehicle search conducted June 15, 1991, by Officer Tim Meguire of the Grand Island Police Department.

The facts are that Officer Meguire had observed a vehicle driven by a Mr. Torres, whom he knew to have a suspended operator's license. He stopped the vehicle and cited Torres. He recognized the defendant, Horacio Gonzalez, as a passenger in the vehicle, and after finishing with Torres, Officer Meguire started to drive away. As he did so, he observed the vehicle in his rearview mirror and saw Gonzalez slide into the driver's seat and then drive off without the car's headlights on. The officer turned around and attempted to catch up to the vehicle, at which time he observed that it was weaving, still without its headlights on, and was reaching speeds of 50 m.p.h. in a 35-m.p.h. zone.

After the officer activated his cruiser's red lights, the vehicle driven by Gonzalez accelerated, at which time the cruiser's siren was activated. Shortly thereafter, the vehicle pulled over, and Officer Meguire pulled his cruiser in behind the vehicle. The driver, Gonzalez, got out of the vehicle with his hands raised

and walked back toward Meguire, stumbling as he approached. He was placed under arrest, handcuffed, and placed in the cruiser. At this point, Officer Meguire returned to the vehicle to make a search of the passenger compartment, at which time he found a small plastic bag containing a white powder, which was taken as evidence, under the driver's seat of the vehicle. On December 2, 1991, the district court for Hall County suppressed the fruits of this search.

This matter is before me pursuant to Neb. Rev. Stat. § 29-824 (Supp. 1991). In reviewing the trial court's ruling on a motion to suppress, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but will uphold the trial court's findings of fact inherent in the court's ruling unless these facts are clearly erroneous. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992). The issue before me is not one of disputed fact, but, rather, the determination of the correct rule of law to apply to undisputed facts. This appears to be a matter of first impression in the State of Nebraska.

In the case before me, Gonzalez got out of the vehicle immediately upon being stopped and walked, with his hands in the air, toward the officer. As he was staggering and had a strong odor of alcohol about him, he was immediately placed under arrest, handcuffed, and placed in the police cruiser. It was only then that the officer searched the vehicle, finding the plastic bag under the driver's seat, which bag is the subject of this motion to suppress.

This is a lawful custodial arrest made upon probable cause. Therefore, the issue before me is the permissible scope, under the U.S. Constitution's Fourth Amendment, of a warrantless search of the passenger compartment of a vehicle driven by an arrestee who has exited the vehicle and has been handcuffed and placed in a police cruiser, therefore having no access to the vehicle's contents.

The Fourth Amendment to the U.S. Constitution protects people against unreasonable searches and seizures by the government, including police officers. The Nebraska Constitution has a like provision, to wit: Neb. Const. art. I, § 7. The Fourth Amendment applies to the states pursuant to *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

Searches conducted pursuant to a warrant, which have been supported by probable cause, are generally considered reasonable and thus not violative of the Fourth Amendment. *State v. Neely*, 236 Neb. 527, 462 N.W.2d 105 (1990). As this is a warrantless search, we must turn to the recognized exceptions to the warrant requirement.

Justice White, in *Neely*, analyzed the three exceptions as they relate to searches of automobiles: (1) search incident to lawful arrest of the occupant, (2) probable cause to believe a vehicle contains contraband, and (3) inventory pursuant to standard police procedure. The State concedes at argument that this warrantless search, to be lawful, can only succeed under the exception for searches incident to lawful arrest of the occupant. That concession is correct on this record, and therefore I confine my analysis to that exception.

The analysis in *Neely* began with *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), which held that it is permissible for an officer to conduct a warrantless search in order to remove weapons which would endanger the officer or aid escape. In addition, under *Chimel*, the officer may search for and seize evidence on the arrestee's person to prevent its concealment or destruction. *Chimel* also held that the officer may search for and seize weapons or contraband within the arrestee's immediate control, which was said to be the area in which the person may gain possession of a weapon or contraband. Justice White referred to this as the " 'wingspan' rule." *Neely*, 236 Neb. at 532, 462 N.W.2d at 108. Other courts have referred to it as the "grabbable" area.

*Chimel* was followed by *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). In that case, a New York state police officer pulled over a speeding vehicle occupied by four men. None of the men owned the vehicle, nor were they related to the owner. The officer smelled burnt marijuana and saw an envelope on the floor marked "Supergold" that he associated with marijuana. He directed the men to get out of the car, placed them under arrest for unlawful possession of marijuana, patted them down, and " 'split them up into four separate areas of the Thruway at this time so they would not be in physical touching area of each other.' " 453 U.S. at 456. He

then picked up the envelope and found that it contained marijuana. After giving the four men *Miranda* warnings and searching each of them, he proceeded to search the passenger compartment of the car. There, he found a black leather jacket belonging to Belton which contained cocaine in a zippered pocket. Belton was indicted for criminal possession of a controlled substance and sought to have the cocaine seized by the officer suppressed.

The Appellate Division of the New York Supreme Court upheld the constitutionality of the search and seizure, but the New York Court of Appeals reversed, holding that "[a] warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest when there is no longer any danger that the arrestee or a confederate might gain access to the article." *People v. Belton*, 50 N.Y.2d 447, 449, 407 N.E.2d 420, 421, 429 N.Y.S.2d 574, 575 (1980).

In its analysis, the U.S. Supreme Court in *Belton* recalled the holding of *Chimel v. California*, that a lawful custodial arrest creates a situation justifying a warrantless search of the person and the immediate surrounding area for weapons that the arrestee might seek to use to avoid arrest or to escape, as well as the need to prevent the concealment or destruction of evidence. However, *Chimel* noted that this exception did not provide "comparable justification . . . for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." 395 U.S. at 763.

The *Chimel* doctrine of search incident to a lawful custodial arrest was considered in *Belton* with respect to the search of the interior of an automobile incident to a lawful custodial arrest of its occupants. In *Belton*, 453 U.S. at 460, the Court observed that the difficulty with the *Chimel* holding was establishing a workable definition of the area " 'within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and *the arrestee is its recent occupant*." (Emphasis supplied.) *Belton* did not expressly draw any distinctions based on whether the arrestee was removed from the vehicle by the officer or removed himself voluntarily before

the officer could get to the car.

The Court in *Belton* found a need to articulate a single familiar standard, otherwise known as a bright line, to balance the social and individual interests involved in the specific circumstances police officers confront. Thus, *Belton* held:

> In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

453 U.S. at 460.

The "generalization" referred to in the *Belton* holding is that the passenger compartment of an automobile is generally deemed to be within the arrestee's wingspan, or grabbable area.

In the case before me, Gonzalez had vacated the car on his own accord, had surrendered to the officer, and had been arrested, handcuffed, and placed in the cruiser. As a factual matter, his wingspan had been clipped and his grabbable area was a police cruiser rather than his own vehicle. Accordingly, it can be argued that the considerations which led to the bright-line test of *Belton* do not exist here because Gonzalez could not obtain weapons or contraband from his handcuffed position in the police cruiser. The issue I must decide is whether this makes any difference under *Belton*, which clearly is the hallmark for determination of the issue. The district court found that it did make a difference, relying on *U.S. v. Fafowora*, 865 F.2d 360 (D.C. Cir. 1989). In that case, the court was dealing with a search of a Jeep used by Bullock and Jones, apparently lookouts in a drug buy. After the drug buy and the failure of Fafowora to return, Bullock and Jones parked the Jeep and were walking away when they were arrested by officers of the Drug Enforcement Agency. The Jeep was then searched, and the contraband found was the subject of the appeal. The defendant Fafowora argued that it was the product of an illegal search.

The court in *Fafowora* read *Belton* to mean that case-by-case

evaluations of whether a defendant's area of control extends to the precise area where the weapons or contraband was found is to be avoided, but "where the police come upon the arrestees outside of an automobile," the area of control does not include the interior, and thus the bright line of *Belton* did not apply. 865 F.2d at 362.

Although the Nebraska Supreme Court has not specifically dealt with this precise fact situation, other courts have. However, before turning to those cases, it seems appropriate to put the issue in perspective. The question is whether a potential arrestee can turn his vehicle into a sanctuary for weapons and contraband by getting out of the car and surrendering to the officer at a distance which is clearly outside the grabbable range of the arrestee.

In considering the issue, it is noteworthy that *Belton* does not state that the arrestee must be removed by the officer or at the officer's direction from the vehicle, but, rather, speaks in terms of the arrestee as a "recent occupant" of the automobile. The question then becomes whether Gonzalez' occupancy was recent enough to bring the search within the *Belton* rule that the passenger compartment of an automobile can be searched without a warrant as a contemporaneous search incident to the arrest of its occupant.

I consider this case to be in a narrow category where the arrestee voluntarily vacates his vehicle before the officer can get to him and as a result is clearly outside the grabbable area, and the arrestee is then controlled in one manner or another so that he is no longer any threat to get weapons or contraband.

In this narrow category of cases, a strong majority of the federal circuit courts of appeals have held that *Belton* authorizes a warrantless search incident to arrest in circumstances factually equivalent or similar to those presented by Gonzalez. *U.S. v. White*, 871 F.2d 41 (6th Cir. 1989); *U.S. v. Karlin*, 852 F.2d 968 (7th Cir. 1988); *United States v. McCrady*, 774 F.2d 868 (8th Cir. 1985); *U.S. v. Lorenzo*, 867 F.2d 561 (9th Cir. 1989); *United States v. Cotton*, 751 F.2d 1146 (10th Cir. 1985).

In *U.S. v. White*, there was a factual dispute, as the arresting officer claimed to have seen a .38-caliber revolver in plain view

on the front floorboard of the defendant's vehicle. The defendant claimed that he was not simply under arrest, but that he had been handcuffed and placed in the backseat of the cruiser, and as the court observed, "certainly out of reach of the car or anything in it." 871 F.2d at 44. The court held that even after an arrestee has been separated from his vehicle and is no longer within reach of the vehicle or its contents, the *Belton* rule allowing a police officer to search a vehicle incident to a lawful arrest applies, and such a search is valid. In *U.S. v. Vasey*, 834 F.2d 782 (9th Cir. 1987), Vasey was handcuffed and seated in the rear of a police car, much like in *White*, but the search was conducted 45 minutes after Vasey had been arrested and placed in the police car, making any threat from him remote. The *White* court used the length of time between the arrest and the search to distinguish *Vasey* from *White* and found that the search in *Vasey* could not be considered contemporaneous under *Belton*. The court in *White* stated that in the sixth circuit, its reading of *Belton* was that "once a police officer has effected a valid arrest, that officer can search the area that is *or was* within the arrestee's control." *White*, 871 F.2d at 44.

In *U.S. v. Karlin*, the police received reports of a burglary suspect being chased by citizens. The officers found the defendant Karlin lying face down on the ground, with his foot inside the open door of a van. The citizens surrounding the scene indicated Karlin was the man they had chased and "one of them had removed him from the car." 852 F.2d at 970. An officer arrested Karlin, handcuffed him, removed his identification, brought him to his feet, patted him down, and placed him in the rear of the squad car. Then and only then was the van searched, and a .38-caliber revolver was removed from under the driver's seat. The court found that the arresting officer followed reasonable procedure in securing custody of Karlin and then undertaking the search of the passenger compartment. The court held that the search was reasonable under *Belton*, but did not "determin[e] whether the officer had rendered Karlin incapable of reaching into the van." *Karlin*, 852 F.2d at 972.

In *United States v. McCrady*, the U.S. Court of Appeals for the Eighth Circuit considered contraband taken from the glove

compartment of a car where the driver had been arrested and was out of the car, but the appellant apparently was still an occupant. Since the appellant was not under arrest, the Eighth Circuit said that *Belton* was not applicable. Nonetheless, *Belton* was relied upon, as was *United States v. Cotton*, for the conclusion that the search of the glove compartment, even after the codefendant Schott was arrested and removed, was within the bright-line rule of *Belton*.

In *U.S. v. Lorenzo*, police officers searched Lorenzo's vehicle after he had been arrested for driving while intoxicated, and they found marijuana and cocaine. The Ninth Circuit explained its decision in *U.S. v. Vasey, supra*, by emphasizing that the search there took place 30 to 45 minutes after Vasey's arrest, which failed to meet the *Belton* requirement that the search be contemporaneous with the arrest. Although not setting forth the facts in any detail, the Ninth Circuit in *Lorenzo* found that the search and Lorenzo's arrest were contemporaneous, and thus the evidence uncovered should not have been suppressed by the trial court.

The issue that I face was well addressed in *United States v. Cotton*. There, the police had received a broadcast of a stolen Mustang automobile, as well as a Camaro traveling with it. An officer found the cars and followed them into a lot, where he arrested the drivers. The arrestees were removed from the vehicles and handcuffed. Another officer who arrived on the scene seized a blue bank bag from the Camaro containing blank car titles, VIN plates, and multiple sets of keys. The appellant argued that since he was handcuffed at the time of the seizure, it did not fall within the rationale of the " 'search incident to a lawful arrest' " cases. 751 F.2d at 1148. He argued that he would have been physically incapable of reaching into the car to dispose of the blue bag or of pulling a weapon from the car.

The Tenth Circuit considered *Belton* applicable, but did not require the arresting officer to undergo a detailed analysis, at the time of the arrest, of whether the arrestees could physically get to the car to seize a weapon or destroy evidence. The court noted that each arrest has unique facts, and it is not inconceivable under various possibilities that an arrestee could gain control of an item within an automobile. The *Cotton* court

thus observed that an officer does not have to sift through all possibilities before deciding whether he can search.

The *Cotton* court examined the rationale of the exception created by *Chimel* and *Belton*, finding that an arrestee has a significantly lesser privacy interest in objects found in a vehicle than he would have in objects found in his home. It was also important to the court that vehicles have obvious mobility and that a search incident to an arrest is a lawful protective measure, even though the suspects are arguably under control. Thus, in *Cotton*, it was held that even where the arrestee is outside the vehicle and handcuffed, the officer may search the passenger compartment of the automobile incident to a lawful arrest because of the lessened expectation of privacy and the risk of loss of evidence due to the vehicle's mobility. The court cited the need for stable guidelines for officers to follow in order to prevent destruction of evidence, as well as to protect themselves. Thus the search in *Cotton* was held to be reasonable and, therefore, constitutionally permissible.

With these principles in mind, I return to Gonzalez' case. In order to conduct a valid search, police officers should not have to race from their vehicles to the arrestee's vehicle to prevent the arrestee from getting out of his or her vehicle. If this were the rule, the quick and speedy suspect could always create a sanctuary for weapons and contraband by getting out of the vehicle and surrendering to the officer first. In my view, it is not determinative whether the arrestee stops the vehicle, jumps out, and surrenders before the officer can vacate the cruiser, or whether the arrestee stays in the vehicle and waits for the officer to approach him or her.

*Belton* creates an exception to the Fourth Amendment prohibition against warrantless searches where there is an arrest from an automobile and a contemporaneous search of the passenger compartment for contraband or weapons. As was earlier emphasized, *Belton* is cast in terms of whether the arrestee is a recent occupant. A suspect who gets out of the car before a police officer can get out of his is nonetheless still a recent occupant of the vehicle to be searched. In addition, I hold that handcuffing the arrestee and placing the suspect away from the grabbable area of the vehicle does not prohibit a

contemporaneous *Belton*-type search of the vehicle from which the arrestee recently came. *Belton* was intended to create a bright line whereby officers who arrest recent occupants of vehicles can search those vehicles, and the officer need not do it at his or her peril in the presence of an unrestrained and potentially dangerous arrestee. Thus, the warrantless search of the passenger compartment of a vehicle recently occupied by a handcuffed and restrained arrestee is not offensive under the Fourth Amendment, when it is a contemporaneous search incident to a lawful arrest. In my view, *Belton* compels this holding.

For these reasons, I hold that the order of the district court for Hall County suppressing the fruits of the search on June 15, 1991, of the vehicle occupied by the defendant Gonzalez is hereby reversed. The search was lawful. This matter is therefore remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.