STATE OF NEBRASKA, APPELLEE, V.
AARON ADAMS III, APPELLANT.
585 N.W. 2d 96

Filed September 1, 1998.    No. A-97-1065.

Thomas C. Riley, Douglas County Public Defender, and Brenda J. Leuck for appellant.

Don Stenberg, Attorney General, and Mark D. Raffety for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and MUES, Judges.

MILLER-LERMAN, Chief Judge.

Aaron Adams III appeals his conviction for possession of a controlled substance. On appeal, Adams argues that the district court erred in finding that a search of a vehicle in which contraband was found was a valid search incident to a lawful arrest and in overruling his motion to suppress. For the reasons set forth below, we affirm as modified.

## BACKGROUND

In an information filed July 9, 1996, the State charged Adams with possession of a controlled substance, a Class IV felony under Neb. Rev. Stat. § 28-416(3) (Reissue 1995). On July 18, Adams was arraigned and pled not guilty.

On September 10, 1996, Adams filed a motion to suppress all evidence obtained from the search of a vehicle on May 21. After a hearing on January 29, 1997, the district court overruled Adams' motion, finding that the search of the vehicle was a search incident to a lawful arrest.

On April 30, 1997, Adams waived his right to a jury trial, and a bench trial was held on June 3 and 20. A review of the trial record shows the following: At approximately 10 p.m. on May 21, 1996, Dave Bianchi, a police officer for the city of Omaha, was in the area of 18th and Burdette Streets in Omaha. At that time, Bianchi observed a brown pickup truck turn east onto Burdette Street without using a turn signal. Bianchi then

stopped the pickup truck, and the driver, later identified as Keith Page, then immediately exited the pickup truck and started walking toward Bianchi. The passenger, later identified as Adams, also immediately got out of the pickup truck and started walking away from Bianchi and toward a nearby apartment building. Bianchi physically grabbed Page and started walking him back toward the pickup truck. Bianchi then yelled at Adams, ordering him to return to the pickup truck as well. Subsequently, Adams sat down on the curb, in between the front of Bianchi's cruiser and the back of the pickup truck.

As Page reentered the pickup truck, he told Bianchi that his driver's license was suspended. Bianchi arrested Page at that point for driving under suspension, handcuffed Page, and placed him in the back of the police cruiser. Another Omaha police officer, Joseph Baudler, arrived as backup immediately after Bianchi placed Page in handcuffs, and after Bianchi ran a data check on Page to confirm that his license was suspended, Baudler conducted a search of the pickup truck.

Upon conducting a search of the pickup truck, Baudler discovered two syringes on the "hump" of the pickup truck, the bump in the middle of the floorboard between the two seats. Subsequently, both syringes were sent to the Eastern Nebraska Forensic Testing Laboratory, and the test results were positive for cocaine. Testimony both at the suppression hearing and at trial showed that the syringes were not in plain view.

At this point, Adams was also placed under arrest, and Page and Adams were taken to central police headquarters, read their rights, and interrogated. Bianchi testified at trial that Page stated that the syringes belonged to Adams, that Adams had a bad drug habit, and that Adams used cocaine every day. Bianchi testified at trial that Page told him that he also uses cocaine and that he had recently used a needle to inject cocaine.

Bianchi testified that Adams stated that he was a needle user and a heroin addict, but that he does not use cocaine. Bianchi testified at trial that he questioned Adams at headquarters and that Adams stated that he did not know anything about the syringes. Bianchi testified at trial that Adams made inconsistent statements regarding the ownership of the pickup. According to Bianchi, Adams last stated that the pickup truck was not his, but

his father's. Adams also stated to Bianchi that he was not driving the pickup truck because his license was suspended and that he had given Page permission to drive the truck but that he retained control over it. Adams also stated to Bianchi that he had been driving around in the pickup truck with Page all day and that no one else besides him and Page had been in the pickup truck on May 21, 1996.

At the suppression hearing and at trial, Bianchi testified that both Page and Adams had track marks on their arms on May 21, 1996, which Bianchi defined as puncture marks from needle insertion, indicative of drug use. Bianchi testified at trial that some of the marks on Adams' arms appeared to be new.

Three witnesses testified on Adams' behalf at trial, and all three testified that subsequent to May 21, 1996, Page told them that the syringes seized by the police were his and not Adams'. After hearing all the evidence, the trial court found Adams guilty of possession of a controlled substance. On October 9, 1997, the trial court sentenced Adams to not less than 3 nor more than 4 years' imprisonment, with credit given for 4 days served.

Adams appeals.

## ASSIGNMENT OF ERROR

On appeal, Adams contends that the district court erred in finding that a search of the vehicle was a valid search incident to a lawful arrest.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997) (relying on two-part appellate analysis articulated in *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996)).

■ Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a

criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact; a conviction will be affirmed in the absence of prejudicial error if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *Id.*

## ANALYSIS

The Fourth Amendment to the U.S. Constitution and the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government, including police officers. The Fourth Amendment applies to the State pursuant to *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Searches conducted pursuant to a warrant are generally considered reasonable. *State v. Neely*, 236 Neb. 527, 462 N.W.2d 105 (1990). See *Konfrst, supra.* There are several categories of searches considered reasonable under the Fourth Amendment although conducted without a warrant. *Neely, supra.* See *Konfrst, supra.* The law is clear, however, that "[i]f police have acted without a search warrant, the State has the burden to prove that the search was conducted under circumstances substantiating the reasonableness of such search or seizure." *State v. Vermuele*, 241 Neb. 923, 925, 492 N.W.2d 24, 27 (1992).

In this case, the search of the pickup truck was a warrantless search, and the district court found that the State met its burden of proving the search of the pickup truck was a proper search incident to the lawful arrest of Page.

On appeal, Adams contends generally that the vehicle was under his control and specifically that the district court erred in finding that the search of the vehicle was a search incident to a lawful arrest. In particular, Adams argues that the search of the pickup truck was not incident to the lawful arrest of Page because at the time of the search, Page was handcuffed and secured in the back seat of Bianchi's cruiser. Since Page was the only person under arrest at the time of the search of the pickup truck, we focus on whether the search of the pickup truck that Page had been driving was a search incident to the lawful arrest of Page.

The State contends that the search incident to Page's arrest was proper, despite the fact that Page was handcuffed and positioned inside Bianchi's cruiser. The State relies, inter alia, on *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). We agree with the State and find that the search of the pickup truck was a valid search incident to the lawful arrest of Page.

In *State v. Gonzalez*, 1 Neb. App. 47, 487 N.W.2d 567 (1992) (single-judge opinion), Chief Judge Sievers addressed the issue presented in this case. As noted below, we agree with the reasoning in *Gonzalez* and repeat it here as an opinion of this court.

In *Gonzalez*, an officer observed a vehicle driven by a driver whom the officer knew to have a suspended driver's license. The officer stopped the vehicle and cited the driver. Gonzalez was a passenger in the vehicle at that time. After citing the driver, the officer started to drive away when he noticed that Gonzalez had moved into the driver's seat and that he was driving without his vehicle's headlights on after dark. The officer then attempted to catch up with the speeding vehicle, subsequently activating the red lights on his cruiser and eventually the siren. After the officer pulled the vehicle over, Gonzalez got out of the vehicle and walked toward the officer, stumbling as he approached. The officer noted that Gonzalez smelled strongly of alcohol. The officer then placed Gonzalez under arrest, handcuffed Gonzalez, and placed him in the back seat of his cruiser. At this point, the officer searched the passenger compartment of the vehicle, where he found a small plastic bag under the driver's seat containing a white powder that later proved to be cocaine. Subsequently, Gonzalez filed a motion to suppress the fruits of the officer's search, which the district court sustained. On appeal, the single judge of this court, relying on Nebraska and federal authority, reversed the order of the district court, stating that the search was a valid search incident to a lawful arrest.

Under *Belton*, 453 U.S. at 460, when "a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." In *Gonzalez*, 1 Neb. App. at 55-56, 487 N.W.2d at 572-73, it was stated:

*Belton* creates an exception to the Fourth Amendment prohibition against warrantless searches where there is an arrest from an automobile and a contemporaneous search of the passenger compartment for contraband or weapons. As was earlier emphasized, *Belton* is cast in terms of whether the arrestee is a recent occupant. A suspect who gets out of the car before a police officer can get out of his is nonetheless still a recent occupant of the vehicle to be searched. In addition, I hold that handcuffing the arrestee and placing the suspect away from the grabbable area of the vehicle does not prohibit a contemporaneous *Belton*-type search of the vehicle from which the arrestee recently came. *Belton* was intended to create a bright line whereby officers who arrest recent occupants of vehicles can search those vehicles, and the officer need not do it at his or her peril in the presence of an unrestrained and potentially dangerous arrestee. Thus, the warrantless search of the passenger compartment of a vehicle recently occupied by a handcuffed and restrained arrestee is not offensive under the Fourth Amendment, when it is a contemporaneous search incident to a lawful arrest.

We adopt this reasoning found in *Gonzalez* and recite it here as an opinion of this court. See, also, *State v. Pittman*, 5 Neb. App. 152, 556 N.W.2d 276 (1996) (holding that search of Pittman's vehicle was valid search incident to Pittman's arrest even though search of Pittman's vehicle was performed while Pittman was at scene handcuffed in police car).

Other jurisdictions have also held that a search of a vehicle is valid incident to a lawful arrest even if the arrestee is secured and away from the vehicle at the time of the search. See, *U.S. v. Sholola*, 124 F.3d 803 (7th Cir. 1997); *U.S. v. Doward*, 41 F.3d 789 (1st Cir. 1994); *U.S. v. Patterson*, 993 F.2d 121 (6th Cir. 1993); *U.S. v. Franco*, 981 F.2d 470 (10th Cir. 1992); *U.S. v. White*, 871 F.2d 41 (6th Cir. 1989); *U.S. v. Lorenzo*, 867 F.2d 561 (9th Cir. 1989); *U.S. v. Karlin*, 852 F.2d 968 (7th Cir. 1988); *United States v. McCrady*, 774 F.2d 868 (8th Cir. 1985); *United States v. Cotton*, 751 F.2d 1146 (10th Cir. 1985).

For the sake of completeness, we note that we are aware of cases to the contrary. See, *U.S. v. Strahan*, 984 F.2d 155, 159

(6th Cir. 1993) (holding that passenger compartment of automobile was not within defendant's " 'immediate control' " at time he was arrested about 30 feet away from vehicle, and thus, search of passenger compartment was not justified as search incident to arrest), and *U.S. v. Vasey*, 834 F.2d 782 (9th Cir. 1987) (holding that search of vehicle was not incident to arrest because search was conducted 30 to 45 minutes after defendant had been arrested and placed in police car, making any threat from him remote).

In the instant case, both Page and Adams immediately exited the vehicle, once it was stopped by Bianchi. After finding that Page was driving under suspension, Bianchi arrested Page, handcuffed him, and placed him in the back of his police cruiser. As Bianchi was placing the handcuffs on Page, Baudler arrived as backup, and Bianchi immediately instructed Baudler to search the pickup truck. During the search of the pickup truck, Page was handcuffed and seated in Bianchi's cruiser. Under the authorities cited above, we find that the search of the pickup truck was contemporaneous to Page's arrest, that Page was a "recent" occupant of the pickup truck, and that the search was proper. The issue of linking the contraband properly found in the vehicle to Adams was one of proof and credibility, which the trier of fact resolved against Adams.

Although the trial court did not err in overruling Adams' motion to suppress, we note plain error in Adams' sentence. Plain error may be found on appeal when an error is plainly evident on the record and which prejudicially affects a litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation, and fairness of the judicial process. *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998).

In 1997, the Legislature amended the indeterminate sentence statute, Neb. Rev. Stat. § 29-2204 (Reissue 1995), to provide that where the criminal offense for which an indeterminate sentence is to be imposed is a Class IV felony, "the court shall fix the minimum and maximum limits of the sentence, but the minimum limit fixed by the court shall not be . . . more than one-third of the maximum term . . . ." § 29-2204(a)(i) (Supp. 1997); 1997 Neb. Laws, L.B. 364. The operative date of this amendment was July 1, 1998.

The law is well settled in Nebraska that where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically stated otherwise. *Jones v. Clarke*, 253 Neb. 161, 568 N.W.2d 897 (1997); *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225 (1971). A sentence is not a final judgment until the entry of a final mandate of an appellate court if an appeal is taken. *Jones, supra.*

Because under the new law the minimum portion of the indeterminate sentence may not exceed one-third of the maximum term, we must modify Adams' sentence to reduce the minimum portion of the sentence to 20 months. Adams is, accordingly, sentenced to serve a term of 20 months' to 4 years' imprisonment.

## CONCLUSION

The search of the pickup truck was incident to Bianchi's lawful arrest of Page and not violative of the Fourth Amendment. The trial court did not err in overruling Adams' motion to suppress the fruits of Baudler's search. However, because of a legislative amendment, the sentence is affirmed as modified.

AFFIRMED AS MODIFIED.