STATE OF NEBRASKA, APPELLEE, V. JAMES RAY, APPELLANT.
609 N.W.2d 390

Filed April 18, 2000. No. A-99-869.

Dorothy A. Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Marie Colleen Clarke for appellee.

SIEVERS and INBODY, Judges, and BUCKLEY, District Judge, Retired.

INBODY, Judge.

## INTRODUCTION

James Ray appeals his conviction for possession of a controlled substance in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1995). His sole assigned error on appeal is that the district court erred in overruling his motion to suppress. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On November 4, 1997, at approximately 7:15 p.m., Nebraska State Patrol Trooper Michael L. Tumbleson was traveling northbound on U.S. Highway 77 approaching the intersection of Old Cheney Road in Lancaster County, Nebraska, when he observed a pickup westbound on Old Cheney Road make a right turn and proceed north on Highway 77 without first coming to a complete stop at the stop sign. Trooper Tumbleson followed the pickup, and after observing the pickup cross the centerline several times, he conducted a stop of the vehicle.

Trooper Tumbleson made contact with the pickup's driver, who was identified as David C. Almery, and the pickup's passenger, subsequently identified as James Ray. When Trooper Tumbleson asked for the pickup's registration, he detected a

strong odor of alcoholic liquor. Almery produced his operator's license, and Trooper Tumbleson returned to his patrol car to run a license and criminal history check on Almery. After learning of an outstanding warrant for Almery, Trooper Tumbleson placed Almery under arrest.

After Almery was arrested, handcuffed, and placed in the patrol car, Trooper Tumbleson contacted Ray. Trooper Tumbleson advised Ray that there was a warrant for Almery's arrest and asked Ray to exit the pickup so that a search of the pickup could be conducted. Trooper Tumbleson then conducted a pat-down search of Ray.

During the pat-down search, Trooper Tumbleson discovered in Ray's right front jeans pocket a ½-inch copper pipe approximately 4 to 6 inches long with two end caps on it and a plastic bag attached. Trooper Tumbleson testified that as he was conducting the pat-down search, he thought the item was possibly a marijuana pipe, but when he asked Ray what the item was, Ray refused to answer. Upon removing the item from Ray's pocket and removing one of the end caps from this pipe, Trooper Tumbleson noted a white powdery substance in the lining, in the cap, and on the plastic bag that had been stuck to the pipe. When Trooper Tumbleson asked Ray what the substance was, Ray refused to answer.

Trooper Tumbleson also discovered a pipefitting with burnt marijuana residue in the right front pocket of Ray's jeans, as well as a film canister in Ray's right front jacket pocket that contained marijuana residue and another film canister containing marijuana in Ray's right front shirt pocket. Following the completion of the pat-down search, Ray was advised that he would receive a citation for possession of marijuana less than 1 ounce and possession of drug paraphernalia.

Trooper Tumbleson returned to his cruiser to fill out Ray's citation, then brought the citation back to Ray, and Ray signed it. At that time, Trooper Tumbleson started searching the pickup. A black knapsack was found on the passenger-side floorboard of the pickup. Trooper Tumbleson asked Ray if the knapsack belonged him, and Ray responded affirmatively. Trooper Tumbleson then asked if there was any contraband inside the knapsack, and Ray responded that "yes, there was contraband"

and that the knapsack contained a mirror, snorting tube, and razor. Trooper Tumbleson opened the knapsack and found a brown leather bag inside, which contained the mirror, snorting tube, and razor. Trooper Tumbleson also located another film canister, one blue tablet with the letters UAD stamped on one side, and a clear plastic bag containing what Trooper Tumbleson believed to be blotter acid. Subsequent testing of the items contained in the knapsack revealed the presence of cocaine on the snorting tube.

On February 9, 1998, an information was filed charging Ray with possession of a controlled substance. Ray filed motions to suppress evidence and statements. On August 14, a hearing was held on Ray's suppression motions, during which the evidence as previously recited was adduced. On December 21, the district court overruled Ray's motions to suppress, except as to the paraphernalia found pursuant to the " 'pat down' " search of Ray. The district court specifically found that Trooper Tumbleson's search of the vehicle was constitutional as a search incident to arrest and that the fact that Trooper Tumbleson testified he was conducting an "inventory" search was not determinative. Additionally, the trial court specifically found that Ray's statements to Trooper Tumbleson were freely and voluntarily made.

A stipulated trial was held on February 25, 1999. The only evidence offered at trial was the transcript of Trooper Tumbleson's testimony from the hearing on Ray's motions to suppress, a videotape of the stop, and the laboratory report from the testing of the items found in Ray's possession. Ray preserved his objections raised by his suppression motions. The court found Ray guilty beyond a reasonable doubt and sentenced Ray to 180 days' incarceration. Ray now timely appeals to this court.

## ASSIGNMENT OF ERROR

Ray's sole assigned error is that the district court erred in overruling his motion to suppress the contents of the knapsack.

## STANDARD OF REVIEW

An appellate court reviews a trial court's ultimate determinations of reasonable suspicion to support an investigatory

stop and probable cause to perform a warrantless search de novo and reviews findings of fact for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). Accord *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

Once an appellate court has conducted a de novo review of the lower court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search, the appellate court reviews the trial court's findings of fact, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998); *State v. Tierney*, 7 Neb. App. 469, 584 N.W.2d 461 (1998). In making this review, the appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Chitty, supra*; *Tierney, supra*.

## DISCUSSION

Before addressing Ray's assigned error, it is important to note what his appeal *does not* involve. Ray does not contend that the initial traffic stop in this case was illegal or that Trooper Tumbleson was not justified in arresting Almery, the driver of the pickup. Further, Ray was not prosecuted for possession of any items located during the course of the pat-down search of his person, and, therefore, the constitutionality of the pat-down search is not at issue. Finally, Ray does not assign as error the district court's finding that Ray's statements to Trooper Tumbleson were voluntary and admissible. Thus, the sole issue before this court on appeal is whether the warrantless search of the knapsack, identified by Ray as belonging to him, was constitutional. In making this determination, although we consider Trooper Tumbleson's subjective belief that he was justified in conducting a search of the vehicle pursuant to the inventory exception to the search warrant requirement, Trooper Tumbleson's subjective belief is not determinative of whether the search was in fact justified pursuant to an exception to the search warrant requirement. Compare *Florida v. Royer*, 460

U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) (fact that officers did not believe probable cause existed and proceeded on consensual rationale or stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), would not foreclose State from justifying defendant's custody by proving probable cause); *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436 (8th Cir. 1989) (although officers believed they possessed only reasonable suspicion, court nevertheless may conclude that probable cause existed); *U.S. v. O'Connell*, 841 F.2d 1408 (8th Cir. 1988) (test of probable cause is not law enforcement officer's articulation of his or her subjective theory, but objective view of facts); *United States v. Lester*, 647 F.2d 869 (8th Cir. 1981) (validity of arrest judged by whether probable cause existed, not whether arresting officers gave arrestee right reason for arrest); *Klingler v. United States*, 409 F.2d 299, 304 (8th Cir. 1969) (because probable cause for arrest is determined by objective facts, officer's subjective opinion that he did not think he had " 'enough facts' " upon which to arrest suspect was not material).

The Fourth Amendment to the U.S. Constitution and Neb. Const. art. I, § 7, protect citizens of Nebraska from unreasonable searches and seizures. *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996). A search not supported by a warrant is per se unreasonable unless it is justified by a recognized exception to the warrant requirement. *Id.* When a search is conducted without a warrant, the State bears the burden of establishing that the search conducted falls within one of the established exceptions to the warrant requirement. See, *id.*; *State v. Adams*, 7 Neb. App. 571, 585 N.W.2d 96 (1998).

The recognized exceptions to the Fourth Amendment's warrant requirement as applied to warrantless searches of vehicles are probable cause, exigent circumstances, consent, search incident to arrest, inventory, and plain view. *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). The only exceptions that need be considered in this case are the inventory exception and the search incident to arrest exception.

*Inventory Search.*

Although the district court did not base the finding that Trooper Tumbleson's warrantless search of the vehicle was con-

stitutional on the "inventory" search exception to the search warrant requirement, we briefly address the issue because there was testimony by Trooper Tumbleson regarding impounding and inventorying the vehicle.

An inventory search is permissible after an arrest where the search is preceded by lawful custody of the vehicle and the search is conducted pursuant to standardized inventory criteria or established routine. See *Konfrst, supra.* The State bears the burden of proving that an inventory search was made pursuant to a standardized criteria or routine required by the Fourth Amendment. *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993). See *Konfrst, supra.*

In *State v. Neely*, 236 Neb. 527, 462 N.W.2d 105 (1990), the defendant moved to suppress evidence found in the trunk of her impounded automobile. The officers who conducted the search testified that the vehicle was impounded because the defendant's passenger did not have a driver's license and that an inventory search was conducted to document the contents of the car; however, the State did not present any evidence as to the standard inventory procedures used by the police department. In considering whether law enforcement's search of the automobile was conducted pursuant to the inventory exception, the Nebraska Supreme Court found that since the State failed to present evidence of any standard inventory procedures used by the police department, the search was not reasonable. The court also stated that "[i]t is unnecessary to determine whether those procedures must include a policy governing the opening of containers found in vehicles, because the State failed to present evidence that *any* search procedure was used by the York Police Department." *Id.* at 540, 462 N.W.2d at 112.

In the instant case, Trooper Tumbleson testified at the suppression hearing that he conducted an inventory search of the vehicle prior to its being towed and that state troopers "are required by policy to inventory all vehicles that are going to be towed so that we have inventory of all items that are in that vehicle before it is taken away from the scene, before anything can be removed, until the individual reclaims the vehicle." Although this evidence sets forth that it is State Patrol policy to conduct an inventory search of vehicles before they are towed, it does

not establish the procedures for conducting the search, nor does the evidence establish whether the procedure includes a policy governing the opening of containers found in vehicles. This evidence regarding the State Patrol's impoundment and inventory procedure is inadequate to meet the State's burden of proving that the inventory search was made pursuant to the State Patrol's standardized criteria or established routine. Therefore, the evidence obtained as a result of the search is not admissible pursuant to the inventory exception to the search warrant requirement.

*Search Incident to Arrest.*

Next, we consider whether Trooper Tumbleson's search of the vehicle was permissible as a search incident to Almery's arrest.

When a law enforcement officer has made a lawful custodial arrest of the occupant of a motor vehicle, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that motor vehicle, including any container, whether open or closed, within the passenger compartment. *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992); *State v. Adams*, 7 Neb. App. 571, 585 N.W.2d 96 (1998). Furthermore, handcuffing the arrestee and placing the suspect away from the recently occupied motor vehicle does not prohibit a contemporaneous search. *Adams, supra*; *State v. Pittman*, 5 Neb. App. 152, 556 N.W.2d 276 (1996) (holding that search of arrestee's vehicle was valid search incident to arrest even though search performed while arrestee was handcuffed in police car).

In the instant case, Almery was arrested pursuant to an outstanding warrant. Thus, Trooper Tumbleson was authorized to conduct a search of the vehicle incident to Almery's arrest, even though at that point Almery had been handcuffed and placed in the patrol car.

Furthermore, we find the argument that the knapsack should have been excluded from the search incident to the arrest of the driver because the knapsack belonged to the passenger unpersuasive and contrary to established law. In *Wyoming v.*

*Houghton*, 526 U.S. 295, 119 S. Ct. 1299, 143 L. Ed. 2d 408 (1999), the U.S. Supreme Court considered the question of whether police officers violate the Fourth Amendment when they search a passenger's personal belongings inside an automobile that they have probable cause to believe contains contraband. After noting that it was uncontested that the police officers had probable cause to believe there were illegal drugs in the car, the U.S. Supreme Court held that officers with probable cause to search a motor vehicle may inspect passengers' belongings found in the car that are capable of concealing the object of the search. In so doing, the Court considered the effect of allowing a distinction among packages or containers based on ownership: A criminal might be able to hide contraband in a passenger's belongings without the passenger's knowledge or permission or a passenger engaged in a common enterprise with the driver and thus having the same interest in concealing the fruits or evidence of their wrongdoing might hide contraband in the passenger's belongings to avoid a search.

> To require that the investigating officer have positive reason to believe that the passenger and driver were engaged in a common enterprise, or positive reason to believe that the driver had time and occasion to conceal the item in the passenger's belongings, surreptitiously or with friendly permission, is to impose requirements so seldom met that a "passenger's property" rule would dramatically reduce the ability to find and seize contraband and evidence of crime. Of course these requirements would not attach (under the Wyoming Supreme Court's rule) until the police officer knows or has reason to know that the container belongs to a passenger. But once a "passenger's property" exception to car searches became widely known, one would expect passenger-confederates to claim everything as their own. And one would anticipate a bog of litigation—in the form of both civil lawsuits and motions to suppress in criminal trials—involving such questions as whether the officer should have believed a passenger's claim of ownership, whether he should have inferred ownership from various objective factors, whether he had probable cause to believe that the passenger was a confederate,

or to believe that the driver might have introduced the contraband into the package with or without the passenger's knowledge.

*Houghton*, 526 U.S. at 305-06.

Additionally, the Court noted that if a passenger exception were to be created, "it is perplexing why that exception should protect only property belonging to a passenger, rather than (what seems much more logical) property belonging to *anyone* other than the driver," *id.* at 306, as the individual privacy would be invaded to the same degree whether or not the individual was present at the time of the search.

▆▆ Although the Court made these statements in the context of probable cause to search, not a search incident to arrest, we believe that the reasoning is equally applicable in the search incident to arrest context. We hold that when law enforcement officers are conducting a search of a motor vehicle incident to the driver's arrest, they may inspect passengers' personal belongings found in the passenger compartment of the motor vehicle, because to allow a distinction between packages or containers based on ownership would create an impracticable rule.

## CONCLUSION

In sum, because we have found that Trooper Tumbleson's search of Ray's knapsack was constitutional based upon a search incident to the arrest of Almery, the district court properly denied Ray's motion to suppress. The order of the district court is affirmed.

AFFIRMED.