STATE OF NEBRASKA, APPELLEE, V. JAMES RAY, APPELLANT.

620 N.W. 2d 83

Filed December 15, 2000.   No. S-99-869.

Dorothy A. Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Marie Colleen Clarke for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

James Ray was convicted in the district court for Lancaster County on one count of possession of a controlled substance in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1995), a Class IV felony. He was sentenced to incarceration for a period of 180 days. He appealed on the sole ground that the district court erred in denying his motion to suppress evidence contained in his knapsack found during the search of a vehicle in which he had been a passenger. The Nebraska Court of Appeals affirmed, based upon its determination that the search was incident to the lawful arrest of the operator of the vehicle and was constitutionally permissible under the reasoning of *New York v. Belton*, 453

U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), and *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999). *State v. Ray*, 9 Neb. App. 183, 609 N.W.2d 390 (2000). We granted Ray's petition for further review and now affirm the judgment of the Court of Appeals.

## BACKGROUND

We briefly summarize the facts of this case which are fully set forth in the published opinion of the Court of Appeals. See *State v. Ray, supra*. On the evening of November 4, 1997, Ray was a passenger in a vehicle operated by David C. Almery. Nebraska State Patrol Trooper Michael L. Tumbleson stopped the vehicle, after observing traffic violations, as it was proceeding north on Highway 77 in Lancaster County. When a criminal history check conducted during the stop disclosed an outstanding warrant for Almery on a fraudulent check charge, Tumbleson arrested Almery and placed him in Tumbleson's patrol car.

Tumbleson then made contact with Ray, who had remained in the vehicle and was its only passenger. Tumbleson asked Ray to exit the vehicle so that it could be searched and then conducted a pat-down search of Ray that yielded an object which Tumbleson believed to be a marijuana pipe and two film canisters containing a substance believed to be marijuana. At that point, Tumbleson informed Ray that he would receive a citation for possession of marijuana and drug paraphernalia.

After completing the citation and obtaining Ray's signature upon it, Tumbleson began searching Almery's vehicle while Ray stood nearby in the company of another officer who had arrived on the scene. Ray responded affirmatively when Tumbleson asked him if a black knapsack which he had found on the passenger-side floorboard of the vehicle belonged to Ray. Tumbleson then inquired whether there was contraband in the knapsack, and Ray again gave an affirmative response, stating that the knapsack contained a mirror, a snorting tube, and a razor. When Tumbleson opened the knapsack, he found a brown leather bag containing the items Ray described. He then arrested Ray. Subsequent tests of the items contained in the knapsack revealed the presence of cocaine on the snorting tube.

On February 9, 1998, an information was filed charging Ray with possession of a controlled substance. Ray filed motions to

suppress the evidence seized and the statements he made to Tumbleson during the search. On December 21, the district court sustained Ray's motion as to the paraphernalia found pursuant to the pat-down of his person but overruled the motions in all other regards. The district court specifically found that Ray's statements were freely and voluntarily made and that the search of the vehicle and the knapsack found therein was constitutional as a search incident to an arrest.

A stipulated trial was held on February 25, 1999. The only evidence offered was the transcript of Tumbleson's testimony from the suppression hearing, a videotape of the stop, and the laboratory report from the testing of the items found in Ray's possession. Ray preserved the objections raised by his suppression motions. Following his conviction and sentence, Ray perfected this appeal and subsequently petitioned for further review of the judgment of the Court of Appeals affirming the judgment of the district court.

## ASSIGNMENT OF ERROR

In his petition for further review, Ray's sole assignment of error is that the Court of Appeals erred in affirming the district court's overruling of his motion to suppress the contents of his knapsack.

## STANDARD OF REVIEW

In reviewing a district court's ruling on a motion to suppress evidence obtained through a warrantless search or seizure, an appellate court conducts a de novo review of reasonable suspicion and probable cause determinations, and reviews factual findings for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Lara*, 258 Neb. 996, 607 N.W.2d 487 (2000).

## ANALYSIS

Modern law governing the permissible scope of a warrantless search incident to an arrest flows from *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). After the defendant in that case was arrested at his home pursuant to an arrest warrant, police officers conducted a warrantless search of the entire residence. California appellate courts upheld the

search as being incident to a lawful arrest. The Supreme Court reversed, concluding that the scope of the search was unreasonably broad and therefore not constitutionally justified. The Court stated:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

395 U.S. at 762-63. After articulating this principle, the Court concluded that there was "no comparable justification . . . for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." 395 U.S. at 763.

The seminal case defining the scope of a warrantless search of a motor vehicle incident to the arrest of its occupant is *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). In that case, a law enforcement officer stopped a vehicle for speeding and determined that none of its four occupants owned the vehicle or were related to its owner. The officer also smelled burnt marijuana and saw an envelope in the vehicle with a marking he knew to be associated with marijuana. The officer ordered all four occupants out of the car and arrested them for possession of marijuana. Upon searching the passenger compartment of the vehicle, the officer found a jacket belonging to Belton, one of the passengers, and discovered cocaine in one of its pockets.

In determining whether the cocaine was obtained as the result of a valid warrantless search, the Court reasoned that *Chimel*

created an exception to the warrant requirement for lawful custodial arrests and authorized a contemporaneous search of the arrestee and the immediately surrounding area. It noted that *Chimel* emphasized that the scope of such a search must be strictly tied to and justified by the circumstances which rendered its initiation possible. The Court then held:

> When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." . . . In order to establish the workable rule this category of cases requires, we read *Chimel*'s definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. . . . Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

(Citations omitted.) *Belton*, 453 U.S. at 459-61. The Court noted that even containers inside a vehicle which could not hold a weapon or evidence could be searched in this circumstance. Quoting *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), it reasoned:

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."

*New York v. Belton*, 453 U.S. 454, 461, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). Several state courts have characterized *Belton* as providing law enforcement officers with a "bright-line" rule to define the permissible scope of warrantless vehicle searches incident to a lawful arrest. See, e.g., *State v. Steele*, 613 N.W.2d 825 (S.D. 2000); *Vasquez v. State*, 990 P.2d 476 (Wyo. 1999); *People v. Mitchell*, 36 Cal. App. 4th 672, 42 Cal. Rptr. 2d 537 (1995).

This case is factually distinguishable from *Belton* in that Ray, the owner of the property seized during the vehicle search, had not been arrested prior to the search. Thus, the question presented is whether, upon the lawful arrest of the operator of a motor vehicle, a warrantless search incident to that arrest may properly extend to a container situated in the passenger compartment of the vehicle which belongs to a passenger who has not been arrested at the time of the search. In resolving this question in the affirmative, the Court of Appeals relied upon the reasoning of *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999). In that case, an officer stopped a vehicle for speeding. While talking to the driver, the officer noticed a hypodermic syringe in the driver's shirt pocket, and upon inquiry, the driver replied that he used the syringe to take drugs. The officer then ordered two female passengers out of the car. On the strength of the driver's incriminating admission, the officer searched the passenger compartment of the car for contraband

and in doing so, found a purse on the back seat belonging to Houghton, one of the passengers. The officer discovered methamphetamine and drug paraphernalia inside the purse. In addressing the validity of the search of the purse, the Supreme Court noted the uncontroverted fact that the officer had probable cause to believe there were illegal drugs in the car. The Court noted its holding in *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), wherein it determined that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Recognizing that under the facts of *Ross* it was not claimed that the package searched belonged to anyone other than the driver, the Court nevertheless reasoned that "if the rule of law that *Ross* announced were limited to contents belonging to the driver, or contents other than those belonging to passengers, one would have expected that substantial limitation to be expressed." *Houghton*, 526 U.S. at 301-02. The Court further reasoned that "[a] passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car." (Emphasis in original.) 526 U.S. at 302. In addition, the Court held "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars . . . ." 526 U.S. at 303. The Court distinguished cases involving the search of a passenger's person, which it found to hold a significantly heightened protection, from searches of a passenger's belongings. See *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948). The Court also found that a "criminal might be able to hide contraband in a passenger's belongings as readily as in other containers in the car." *Houghton*, 526 U.S. at 305. Rejecting the rationale applied by the Wyoming Supreme Court in determining the search to be invalid, the Supreme Court reasoned:

> To require that the investigating officer have positive reason to believe that the passenger and driver were engaged in a common enterprise, or positive reason to believe that the driver had time and occasion to conceal the item in the passenger's belongings, surreptitiously or with friendly

permission, is to impose requirements so seldom met that a "passenger's property" rule would dramatically reduce the ability to find and seize contraband and evidence of crime. Of course these requirements would not attach (under the Wyoming Supreme Court's rule) until the police officer knows or has reason to know that the container belongs to a passenger. But once a "passenger's property" exception to car searches became widely known, one would expect passenger-confederates to claim everything as their own. And one would anticipate a bog of litigation—in the form of both civil lawsuits and motions to suppress in criminal trials—involving such questions as whether the officer should have believed a passenger's claim of ownership, whether he should have inferred ownership from various objective factors, whether he had probable cause to believe that the passenger was a confederate, or to believe the driver might have introduced the contraband into the package with or without the passenger's knowledge.

*Wyoming v. Houghton*, 526 U.S. 295, 305-06, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

■ While recognizing that *Houghton* involved a probable cause search, the Court of Appeals found its reasoning equally applicable to a search incident to a lawful arrest. It concluded:

We hold that when law enforcement officers are conducting a search of a motor vehicle incident to the driver's arrest, they may inspect passengers' personal belongings found in the passenger compartment of the motor vehicle, because to allow a distinction between packages or containers based on ownership would create an impracticable rule.

*State v. Ray*, 9 Neb. App. 183, 192, 609 N.W.2d 390, 397 (2000).

Several other courts addressing this issue have reached the same conclusion on facts similar to those of this case. For example, in *State v. Lopez*, 198 Ariz. 420, 10 P.3d 1207 (Ariz. App. 2000), the court held that after arresting the operator of a vehicle because he lacked proof of a driver's license, police were justified in searching a backpack found behind the front passenger seat which belonged to a passenger who had not been

arrested. The backpack contained a pair of trousers with packages of cocaine in the pockets. Relying upon the reasoning of *Houghton,* the court concluded that the backpack and trousers within it were lawfully searched incident to the driver's arrest, notwithstanding the fact that they were owned by the unarrested passenger. The court noted that "weapons and evidence of the arrestee's suspected offense can be concealed in a passenger's belongings," 198 Ariz. at 424, 10 P.3d at 1211, and held that as in the case of a vehicle search based upon probable cause, the needs of law enforcement in a search of a vehicle incident to the operator's arrest outweighed a nonarrested passenger's privacy interest in belongings found within the passenger compartment.

Similarly, in *State v. Steele,* 613 N.W.2d 825 (S.D. 2000), the South Dakota Supreme Court held that upon arresting the driver of a vehicle for probation violations and securing him in a patrol car, officers were justified in searching a purse belonging to a passenger, which purse was observed on the front seat of the vehicle at the time of the arrest. The court relied upon the reasoning of *Houghton* and further noted that the "legitimate governmental concerns" underlying the *Belton* rule could not be "negated by passenger discretion." *Steele,* 613 N.W.2d at 830. See, also, *People v. McMillon,* 892 P.2d 879 (Colo. 1995) (holding that under *Belton,* police may validly search belongings of passenger after driver of vehicle has been arrested so long as belongings are in vehicle when search is made); *People v. Mitchell,* 36 Cal. App. 4th 672, 42 Cal. Rptr. 2d 537 (1995) (holding that consistent with bright-line rule of *New York v. Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), upon arresting occupant of vehicle, police may search passenger compartment and any containers therein, including containers belonging to nonarrested individuals); *State v. Moore,* 619 So. 2d 376 (Fla. App. 1993) (holding that after arresting driver of vehicle based upon outstanding warrants discovered during traffic stop, police had right under *Belton* to search vehicle, including passenger's purse which was found on front floorboard).

We agree that *Belton* established a bright-line rule which permits a warrantless search of the passenger compartment of a vehicle and containers situated therein incident to the lawful arrest of any occupant of the vehicle. We further agree that the

reasoning of *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999), leads to the logical conclusion that the scope of such search extends to items of property within the passenger compartment at the time of the search belonging to an occupant of the vehicle who was not arrested. Accordingly, the Court of Appeals correctly determined that the district court did not err in denying Ray's motion to suppress evidence found in Ray's knapsack which was situated within the passenger compartment of Almery's vehicle at the commencement of the search incident to the lawful arrest of Almery.

## CONCLUSION

For the reasons stated above, upon further review of this matter, we affirm the holding and judgment of the Court of Appeals.

AFFIRMED.