No. 86,553

STATE OF KANSAS, *Appellee*, v. TRACY D. BOYD, *Appellant*.

64 P.3d 419

Review of the judgment of the Court of Appeals in *State v. Boyd*, 30 Kan. App. 2d 720, 47 P.3d 419 (2002).

Opinion filed March 7, 2003.

*Nathan B. Webb*, assistant appellate defender, argued the cause, and *Randall L. Hodgkinson*, deputy appellate defender, was with him on the briefs for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Tracy D. Boyd was convicted of possession of crack cocaine. She was a passenger in a vehicle stopped for a traffic violation. The driver consented to a search of the vehicle, Boyd was told to leave her purse on the floorboard when she got out of the vehicle, police found a crack pipe in the console of the vehicle, and then the officer searched Boyd's purse. It contained crack cocaine. Boyd's motion to suppress the evidence was denied by the trial court, and Boyd appealed. The Court of Appeals affirmed. *State v. Boyd*, 30 Kan. App. 2d 720, 47 P.3d 419 (2002). Boyd's petition for review was granted by this court September 24, 2002.

Officers Real and Herman were conducting surveillance of a residence in Wichita for suspected drug activity. Approximately a week earlier, they had arrested the woman who lived in the house and a man who was there for possession of cocaine. At approximately 1:30 a.m., a vehicle that had been parked in front of the residence drove away and made a turn without signaling. The officers stopped the vehicle.

Officer Real asked the driver, Richard Lassiter, for his license and proof of insurance. At the same time, Officer Herman approached the passenger's side of the vehicle and obtained identification from Boyd. Boyd retrieved her identification from her purse and placed her purse back on the floorboard of the vehicle.

Because Lassiter appeared "a lot more nervous than most," Real asked him to get out of the vehicle. Lassiter got out and went to the rear of the vehicle to talk with the officer. Lassiter said they were coming from seeing Betty DeMarco, the woman who had been arrested earlier at the watched residence. Officer Real asked Lassiter if he had any illegal substances on him, and Lassiter responded negatively. Lassiter consented to a search of his person, and no illegal substance was found. Real asked Lassiter if the vehicle was his and, if so, whether he could search it. Lassiter responded affirmatively to both questions.

When Officer Herman was told that Lassiter had consented to a search of the vehicle, Herman asked Boyd to get out. Boyd testified that when she left the vehicle, she reached for her purse to

take it with her but was told by Officer Herman to leave it inside the vehicle. Boyd put her purse down and stepped out of the vehicle. She further testified that, after she was out of the vehicle, the officer who had gotten into the passenger compartment asked if it was her purse and if he could search it. She told him her purse was a personal belonging and that she did not want him to search it.

Officer Real began searching the passenger compartment around the area where Lassiter had been sitting. In the center console ashtray, he found a crack pipe. Boyd's purse was sitting on the floorboard in front of the console. Real searched it and found a plastic bag containing off-white nuggets, which were later confirmed to be crack cocaine.

Boyd was arrested and charged with possession of cocaine. She filed a motion to suppress the evidence. After a hearing, the trial court denied Boyd's motion to suppress, finding that *Wyoming v. Houghton*, 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999), controlled. The Court of Appeals agreed. Boyd filed a petition for review of the Court of Appeals' decision. Boyd argues that *Houghton* is not controlling and the trial court erred in denying suppression based upon *Houghton*.

When a motion to suppress evidence is filed, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. *State v. Damm*, 246 Kan. 220, 222, 787 P.2d 1185 (1990). Where, as here, the facts material to a decision on a motion to suppress evidence are not in dispute, the question whether to suppress is a question of law subject to unlimited review. *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998).

" ' "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' [Citation omitted.]" ' " *State v. Jaso*, 231 Kan. 614, 620, 648 P.2d 1 (1982).

The general rule that warrantless searches and seizures are unreasonable has five exceptions: (1) consent; (2) hot pursuit; (3) incident to a lawful arrest; (4) stop and frisk; and (5) probable cause

to search with exigent circumstances. *State v. Box*, 28 Kan. App. 2d 401, 404, 17 P.3d 386 (2000).

In this case, the trial court denied Boyd's motion to suppress based upon probable cause with the exigent circumstances exception. This exception allows a warrantless search where there is probable cause for the search and exigent circumstances justify an immediate search. *State v. Platten*, 225 Kan. 764, 769, 594 P.2d 201 (1979). The most common example of a warrantless search based on exigent circumstances is the search of a vehicle. The United States Supreme Court and the Kansas Supreme Court have both recognized that exigent circumstances may allow the warrantless search of a vehicle when probable cause has been established to justify a search. *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280 (1925); *Jaso*, 231 Kan. 614, Syl. ¶ 2. Exigent circumstances, however, do not include situations where only a mere possibility exists that evidence could be destroyed or concealed. *State v. Hardyway*, 264 Kan. 451, 465, 958 P.2d 618 (1998).

The trial court and the Court of Appeals considered *Wyoming v. Houghton*, 526 U.S. 295, to be controlling. In that case, officers stopped an automobile for speeding and driving with a faulty brake light. While questioning the driver, the officer noticed a hypodermic syringe in the driver's shirt pocket. The driver told the officer he used it to take drugs. Having probable cause to believe there were illegal drugs in the car, officers ordered the two female passengers out and searched the passenger compartment for contraband. The officers searched a purse, which they found on the back seat. It belonged to Houghton, one of the passengers, and it contained drugs and drug paraphernalia. She was arrested.

*United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), held that officers with probable cause to search a lawfully stopped vehicle may conduct a warrantless search of any container found in the vehicle that is capable of concealing the object of the search. In *Houghton*, the Supreme Court extended the *Ross* rule to searches of containers belonging to passengers, including personal belongings such as purses. "A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are 'in' the car, and

the officer has probable cause to search for contraband *in* the car."
526 U.S. at 302. The Supreme Court further reasoned that

"[p]assengers, no less than drivers, possess a reduced expectation of privacy with
regard to the property that they transport in cars, which 'trave[l] public thor-
oughfares,' . . . 'seldom serv[e] as . . . the repository of personal ef-
fects,' . . . are subjected to police stop and examination to enforce 'pervasive'
governmental controls '[a]s an everyday occurrence,' . . . and, finally, are ex-
posed to traffic accidents that may render all their contents open to public scru-
tiny. [Citations omitted.]" 526 U.S. at 303.

Weighing the passenger's privacy expectations against the govern-
mental interest in effective law enforcement "with an eye to the
generality of cases," 526 U.S. at 305, the Supreme Court concluded
that the needs of law enforcement outweighed a personal privacy
interest in the circumstances. 526 U.S. at 306.

The Court of Appeals opinion contains mixed references to con-
sent and probable cause as possible bases for the search of Boyd's
purse. The Court of Appeals' citation of *Houghton* would indicate
that it viewed the officer's search of Boyd's purse to have been
based on probable cause, once the crack pipe had been found, to
believe there were illegal drugs in the vehicle. The Court of Ap-
peals stated "that probable cause to search Boyd's purse was di-
rectly connected to the discovery of the crack pipe in the vehicle's
console." 30 Kan. App. 2d at 725. Consideration, however, also was
given by the Court of Appeals to the driver's consent, and it does
not appear that consent was ruled out as a possible basis for the
search. 30 Kan. App. 2d at 728. The Court of Appeals concluded
its opinion in *Boyd* with this dual message: "We hold that under
the totality of the circumstances, no illegal search or seizure of any
item in a vehicle takes place when probable cause has been estab-
lished and the officers receive voluntary consent to search from
the driver of the vehicle." 30 Kan. App. 2d at 728.

On appeal, the State argues that the search of Boyd's purse was
justified by the "probable cause established upon discovery of the
crack pipe in the console." Lassiter's consent to search his van was
voluntary and is not disputed. The State does not argue that Boyd's
purse was subject to search based upon Lassiter's consent. Rather
it contends that the search of the van was lawful due to Lassiter's

consent and, in conducting the search, officers discovered the crack pipe in the console. The State concedes the purse was not searched incident to an arrest.

The State relies on language in *Houghton*: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 526 U.S. at 301. However, *Houghton* is distinguishable from the present case and is not, in our view, controlling.

There are factual differences between *Houghton* and the present case. There seems to be no question that, once the officer found a crack pipe in Lassiter's vehicle, he had probable cause to believe that illegal drugs would be found there. In *Houghton*, probable cause to believe that illegal drugs would be found in the vehicle existed before the officer entered it. The driver of the vehicle had a hypodermic syringe in his shirt pocket, which was obvious to the officer who had stopped the vehicle and gave probable cause to search. In searching the passenger compartment of the vehicle, the officer found a passenger's purse, which had been left on the back seat when the passengers got out of the vehicle. In the present case, the driver of the vehicle gave consent to the officer to search the passenger compartment of the vehicle. Boyd was told to get out of the vehicle. She tried to take her purse with her but was told to leave it in the vehicle. She refused consent to search her purse. After finding the crack pipe, the officer searched Boyd's purse, which she had left in the vehicle as directed. The question for the court is whether Boyd's attempt to take her purse with her when she got out of the vehicle, which was before the officers had probable cause to search the vehicle, separates this case from *Houghton* so as to indicate a different result.

Boyd directs the court's attention to Justice Breyer's concurring opinion in *Houghton*, where he noted that the *Ross* rule

"does not extend to the search of a person found in the automobile. As the Court notes, and as *United States v. Di Re*, 332 U.S. 581, 586-587 (1948), . . . makes clear, the search of a person, including even ' "a limited search of the outer clothing," ' [citation omitted] is a very different matter in respect to which the law provides 'significantly heightened protection.' [Citation omitted.]" 526 U.S. at 308.

Justice Breyer stated that it was important to him that Houghton's purse "was found at a considerable distance from its owner, who did not claim ownership until the officer discovered her identification while looking through it." 526 U.S. at 308. He continued:

"Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times. So I am tempted to say that a search of a purse involves an intrusion so similar to a search of one's person that the same rule should govern both. However, given this Court's prior cases, I cannot argue that the fact the container was a purse *automatically* makes a legal difference, for the Court has warned against trying to make that kind of distinction. . . . But I can say that it would matter if a woman's purse like a man's billfold, were attached to her person. It might then amount to a kind of 'outer clothing,' . . . which under the Court's cases would properly receive increased protection. . . . In this case, the purse was separate from the person, and no one has claimed that, under those circumstances, the type of container makes a difference. For that reason, I join the Court's opinion." 526 U.S. at 308.

In *U.S. v. Di Re*, 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222 (1948), the car was stopped based upon information provided by an informant. The contraband found in the defendant's possession was counterfeit gasoline ration coupons. The informant was in the back seat; he fingered the driver. Di Re was sitting in front next to the driver. All three were taken into custody, searched, and arrested. The government defended the search of Di Re as incident to a lawful arrest and "as incident to search of the vehicle reasonably believed to be carrying contraband." The court disagreed, stating:

"Assuming, however, without deciding, that there was reasonable cause for searching the car, did it confer an incidental right to search Di Re? It is admitted by the Government that there is no authority to that effect, either in the statute or in precedent decision of this Court, but we are asked to extend the assumed right of car search to include the person of occupants because 'common sense demands that such right exist in a case such as this where the contraband sought is a small article which could easily be concealed on the person.' " 332 U.S. at 586.

The Court ruled that the existence of reasonable cause for searching an automobile believed to be carrying contraband does not warrant the search of an occupant thereof, although the con-

traband sought is of a character which might be concealed on the person. 332 U.S. at 587.

As Justice Stevens noted in his dissent in *Houghton*:

"In all of our prior cases applying the automobile exception to the Fourth Amendment's warrant requirement, either the defendant was the operator of the vehicle and in custody of the object of the search, or no question was raised as to the defendant's ownership or custody. In the only automobile case confronting the search of a passenger defendant—*United States v. Di Re*, 332 U.S. 581 (1948)—the Court held that the exception to the warrant requirement did not apply. *Id.*, at 583-587 (addressing searches of the passenger's pockets and the space between his shirt and underwear, both of which uncovered counterfeit fuel rations). In *Di Re*, as here, the information prompting the search directly implicated the driver, not the passenger." 526 U.S. at 309.

Noting that the majority opinion in *Houghton* reaffirms *Di Re's* heightened protection against a body search in distinguishing it from passengers' reduced expectation of privacy with regard to their property, a commentator poses the question whether a purse in the car will always be subject to search under the *Houghton* rule and concludes: "It is impossible to say for sure, though the answer ought to be no for the reasons given in the Breyer concurring opinion." 3 LaFave, Search and Seizure § 7.2(d), p. 507 (3d ed. Supp. 2003).

In the supplemental brief filed after this court granted review, Boyd correctly notes that the four cases from other states that were cited by the Court of Appeals as applying *Houghton* all involve searches incident to a lawful arrest, which are subject to the rule of *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). See 30 Kan. App. 2d at 727-28. The Court of Appeals cited *State v. Ray*, 260 Neb. 868, 620 N.W.2d 83 (2000); *State v. Lopez*, 198 Ariz. 420, 10 P.3d 1207 (2000); *State v. Pallone*, 236 Wis. 2d 162, 613 N.W.2d 568 (2000); and *State v. Steele*, 613 N.W.2d 825 (S.D. 2000). Boyd contends that *Belton* should not be extended to circumstances, such as those in the present case, in which the search was undertaken before an arrest was made.

In *Ray*, cocaine was found in Ray's knapsack, which was in the passenger compartment of a vehicle. Ray had been a passenger, and the driver had been arrested. The vehicle was searched inci-

dent to the driver's arrest. The trial court's denial of Ray's motion to suppress the evidence was affirmed on the ground that *Belton* "established a bright-line rule which permits a warrantless search of the passenger compartment of a vehicle and containers situated therein incident to the lawful arrest of any occupant of the vehicle." 260 Neb. at 876. The court further stated that the reasoning of *Houghton* "leads to the logical conclusion that the scope of such search extends to items of property within the passenger compartment at the time of the search belonging to an occupant of the vehicle who was not arrested." 260 Neb. at 877.

In *Lopez*, cocaine was found in the pockets of jeans that were in Lopez' backpack, which was in the passenger compartment of a vehicle. Lopez had been a passenger, and the driver had been arrested. The vehicle was searched incident to the driver's arrest. Applying *Belton* and *Houghton*, the Arizona Court of Appeals held that the police were entitled to search Lopez' belongings, including his jeans, as a search incident to arrest of the driver. 198 Ariz. at 424.

In *Pallone*, cocaine was found in Pallone's duffel bag, which was in the passenger compartment of a vehicle. Pallone had been a passenger, and the driver had been arrested. The vehicle was searched incident to the driver's arrest. Applying *Belton* and *Houghton*, the Wisconsin court concluded "that the search of the duffel bag was proper under both the search incident to arrest exception and the probable-cause-to-search-a-motor-vehicle exception to the constitutional warrant requirements." 236 Wis. 2d at 200-01.

In *Steele*, methamphetamine was found in Steele's purse, which was in the passenger compartment of a vehicle. Steele had been a passenger, and the driver had been arrested. 613 N.W.2d at 826. The vehicle was searched incident to the driver's arrest. Applying *Belton* and *Houghton*, the South Dakota court held that the search of the passenger's purse was proper as a search incident to arrest of the driver.

*Steele*, although decided under *Belton*, is of particular interest for the present case because it involves the question whether a passenger is entitled to take her purse with her when asked to get

out of the vehicle so that it can be searched incident to the driver's arrest. Steele was not allowed to take her purse with her when she got out of the vehicle, and she argued that the officer's "ordering her to leave her purse resulted in an unconstitutional search." 613 N.W.2d at 827. The South Dakota court majority rejected the argument: "[I]f Steele's argument prevailed and passengers were permitted to remove containers from the vehicle prior to the search, the *Belton* rule would be nullified. Weapons and contraband, the objects of a lawful search, would be removed from the vehicle and the arrestee able to hide these items from police." 613 N.W.2d at 827. The South Dakota court quoted *Houghton* for the principle that "[a] passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car." 526 U.S. at 302. Two justices concurred, without opinion. 613 N.W.2d at 830.

Two justices dissented in *Steele*, disagreeing with the majority's reliance on *Belton*. 613 N.W.2d at 830-32. They would distinguish *Belton* on the ground that the passenger in that case was subject to a lawful custodial arrest and was searched incident to his arrest. According to the dissenting justices, "[t]hat is not the situation before this Court. In the present case, Steele was not arrested, she was merely a passenger in a vehicle where the driver was stopped for speeding and later arrested. The search of Steele's purse was not incident to a lawful custodial arrest." 613 N.W.2d at 830.

The dissenting justices cited and discussed *State v. Newsom,* 132 Idaho 698, 979 P.2d 100 (1998), and *State v. Nelson,* 89 Wash. App. 179, 948 P.2d 1314 (1997). 613 N.W.2d at 830-32. The same cases are relied on by Boyd, even though they are cases of search incident to arrest.

The facts in *Newsom* are similar to those in *Steele*. Officers stopped the vehicle for a turn signal violation. A registration check showed that there was an outstanding felony warrant for the owner of the vehicle. The driver was arrested, and Newsom, a passenger, was directed to get out of the car. She had her purse in her lap and was ordered to leave it in the car. The car was searched incidental to the driver's arrest. In searching the car, the officer

searched Newsom's purse, finding two glass vials and methamphetamines. The trial court denied Newsom's motion to suppress, stating: "[I]t was a search incidental to a valid arrest under the *Belton* case." On appeal, the Idaho Supreme Court stated that the following rule was announced in *Belton*:

"[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed." 132 Idaho at 699.

The Idaho Supreme Court reversed the trial court, concluding that

"*Belton* does not authorize the search of another occupant of the automobile merely because the other occupant was there when the arrest occurred. As the Supreme Court carefully pointed out in *Belton*, 'the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.' 453 U.S. at 461, 101 S. Ct. at 2864, 69 L.Ed. 2d at 775. Therefore, in the present case *Belton* does not authorize a search of the passenger based solely on the arrest of the driver." 132 Idaho at 700.

The court found that Newsom had the purse on her lap when she was directed to get out of the car. The court held:

"In these circumstances, the passenger's purse was entitled to as much privacy and freedom from search and seizure as the passenger herself. The undisputed evidence is that the passenger did not leave the purse in the vehicle voluntarily. . . . Therefore, we conclude that when the passenger left the vehicle she was entitled to take her purse with her and was not required by *Belton* to leave it in the vehicle for the first officer to search." 132 Idaho at 700.

In *Nelson*, the passenger was arrested based upon an outstanding valid warrant. Nelson was the driver; she was asked to get out of the truck but directed to leave her purse in the truck. The officers searched the truck and Nelson's purse, finding methamphetamine and drug paraphernalia. Nelson was placed under arrest. The trial court ordered evidence suppressed because the officer could not order her to leave her purse in the truck so he could search it. On appeal, the State argued the search was justified as a search inci-

dent to a warrant. In affirming the trial court, the Washington Court of Appeals acknowledged:

"The valid arrest of a driver justifies a search of the car's passenger compartment, not including locked containers. The valid arrest of a passenger justifies a search of the car's passenger compartment, not including locked containers. The valid arrest of either the driver or passenger justifies a search of a purse found in the car, and without so holding, we assume this is true regardless of whether the purse belongs to the driver or the passenger. It is our view, however, that the valid arrest of a driver does not justify the search of a purse known to belong to a passenger, where the purse is not in the car at the time of the search, but rather is on the passenger's person and the passenger is outside the car." 89 Wash. App. at 182.

The court then held:

"Thus, if the police do not believe a person presents a danger, they cannot search the person and their clothing. This would include a purse they are carrying. Although Ms. Nelson was not carrying her purse, she was prevented from doing so by Officer Maynard. Up to the time she exited the truck, she had kept control of the purse by keeping it between her legs." 89 Wash. App. at 183.

In the supplemental brief filed in this court, the State attempts to distinguish the present case from *Newsom* and *Nelson* on the degree of control each exercised over the purse when directed to leave it in the vehicle. Newsom had the purse in her lap, Nelson had the purse secure between her legs. The State seems to say that if Boyd's purse had been in her lap or secured between her legs, it would not have been subject to search. That is a distinction without a difference. There is no question the purse was Boyd's personal property, in her possession, and under her control. Like Newsom and Nelson, she attempted to take it with her but was directed to leave it in the van. Under these circumstances her purse was entitled to the same increased protection from search and seizure as afforded to her person. The search of Boyd's purse violated her Fourth Amendment right to be secure in her person and effects from unreasonable search and seizure.

No cases factually similar to the present one have been brought to the court's attention, nor has our research revealed any. All the cases discussed in this opinion, including *Houghton*, are distinguishable from the present case. In *Houghton*, probable cause to

believe illegal drugs would be found in the car existed before the officer entered the car. The officer found a passenger's purse, which had been voluntarily left in the back seat. Here the officer found no drugs on Lassiter and had no probable cause to believe illegal drugs were in the car when Boyd was told by the officer to get out of the car. Thus, at that point, the officer did not have probable cause to search Boyd or her purse. The officer had no right to order her to leave her purse in the car. The State conceded at oral argument that if Boyd would have been allowed to take her purse with her the officer could not have lawfully searched her or her purse. If we hold an officer can lawfully order a passenger to leave her purse in the car and thereby make it subject to search, then what prevents the officer from ordering the passenger to remain in the car, thus subjecting her to be subsequently searched along with the car. The protection of the Fourth Amendment cannot be defined at the discretion of a law enforcement officer. The heightened privacy interest and expectation in the present case is sufficient to tip the balance from governmental interest in effective law enforcement, which outweighed the privacy interest in *Houghton* where the purse was voluntarily left in the back seat unclaimed. We hold that where a passenger is told by a police officer to get out of a lawfully stopped vehicle and in response to the officer's order to leave her purse in the vehicle, puts the purse down and exits the vehicle, a subsequent search of the purse as part of a search of the vehicle violates the passenger's Fourth Amendment right against unreasonable search and seizure. The motion to suppress should have been granted.

The State also asserts that discovery of the drugs was inevitable because Boyd admitted that her purse contained cocaine. Officer Herman's testimony, however, shows that Boyd was under arrest when she gave him a list of the contents of her purse. We do not accept the State's rationale that the end justifies the means.

The judgments of the Court of Appeals and the district court are reversed, and the case is remanded for a new trial.