NOT DESIGNATED FOR PUBLICATION

No. 121,087

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

REGAN DANIELLE HAMBLIN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed October 23, 2020. Reversed and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Thomas C. Penland*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., HILL and ATCHESON, JJ.


PER CURIAM: Regan Danielle Hamblin appeals her convictions for possession of methamphetamine and possession of drug paraphernalia by challenging the denial of her motion to suppress evidence seized during a traffic stop in which she was a passenger. Officers conducted a traffic stop after observing Hamblin was not wearing a seatbelt. Neither occupant had a driver's license, and the vehicle had no valid registration, so the officers arrested the driver and asked Hamblin to exit so officers could tow the car. As Hamblin gathered her belongings, she quickly moved a small red zipper bag that she was sitting on into her purse, prompting an officer to ask her to open the bag. Inside the bag,

1

the officer observed small baggies of methamphetamine and a glass pipe inside, so he arrested Hamblin. She later moved to suppress the evidence seized as a result of the stop, challenging the lawfulness of the stop and the search. The trial court found that the officer's testimony about an observed seatbelt violation was credible and that there was probable cause to search the bag for contraband. After reviewing the totality of the circumstances, we disagree that there was probable cause to search the bag and reverse her convictions and remand for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL HISTORY

On an evening in March 2017, Officer Mark Palmerin was on patrol in Wyandotte County, Kansas, with his partner Chad Williams. As they were travelling eastbound, Palmerin allegedly observed Hamblin, a passenger in a vehicle travelling westbound, not wearing a seatbelt. They conducted a traffic stop of the vehicle. During the stop, Palmerin spoke with Hamblin while his partner contacted the driver. Palmerin noticed that Hamblin was now wearing a seatbelt, and that she appeared nervous because she was looking around and her hands were shaking.

After discovering that the driver had no license, Officer Williams took the driver into custody. The officers also learned that the vehicle had no valid registration. Palmerin asked Hamblin to exit the vehicle so that officers could order it towed, since she also had no driver's license. As Hamblin prepared to exit the vehicle, Palmerin saw her raise up slightly and move a small red zipper bag that she was sitting on into her purse. Palmerin asked her to open the bag and he saw a glass pipe and what appeared to be two small baggies of methamphetamine inside, so he placed her under arrest. The State later formally charged Hamblin with one count each of possession of methamphetamine and possession of drug paraphernalia.

2

Hamblin pleaded not guilty and then moved to suppress the evidence seized during the traffic stop, challenging whether the officers had (1) reasonable suspicion to conduct or extend the traffic stop; and (2) probable cause to search the vehicle after observing the red zipper bag. Hamblin asserted that reasonable suspicion for the stop was lacking because at the preliminary hearing Palmerin could not articulate his location when he observed the violation. She also contended the video of the traffic stop showed she was wearing a seatbelt during the traffic stop, contradicting the officer's basis for conducting the stop. She then argued that merely observing a red zipper bag without other indicia of drug possession could not provide the officers with probable cause to search the vehicle.

The trial court held an evidentiary hearing on the suppression motion. The only testifying witness was Palmerin. He testified as outlined above. He also stated that he had been a police officer with the Kansas City, Kansas, police department since September 2010. He was part of a special "nighttime community policing" unit that conducted traffic stops and "got a lot of narcotics off the streets." The purpose of the unit was to conduct car stops in an effort to locate violent criminals. Through his training and experience, Palmerin had encountered individuals storing their drugs "in their pockets, Crown Royal bags, small zip bags, sunglass case[s], [and] digital camera cases."

The trial court denied the motion in an oral ruling from the bench:

"The Court appreciates the defense motion and find it is a legitimate one, however, I am denying it for the following reasons: the seatbelt, we have three choices, either the officer—either defendant had her seatbelt on and made a good faith mistake and he just didn't see what he thought he saw or he can be correct, that the defendant put the seatbelt on between her first sighting and the officers behind her or coming across and between the stop would have been plenty of time to put that on, or the third option is that the police officer is just lying.

3

"Now, it very well may be that the officers were looking for a reason to pull this car over, maybe it fit a profile, I don't know but, however, that's not illegal as long as you have reasonable suspicion or viewing of a crime or traffic infraction to pull somebody over. Again, the officer came up here and testified that he's an eight-year veteran, the Court sees no reason to accuse him of lying actively. He very well may have been wrong but, again, I find that most likely the defendant probably put the seatbelt on between the time of her seeing the officers and the time of the stop.

. . . .

"Getting to the factors for probable cause, we have the officers, what the officer testified to as excessive nervousness. Everybody is nervous when pulled over by the police. In fact the rare time I may get pulled over for a traffic infraction, you get nervous just naturally, but I'm not visibly shaking and there's no reason for someone to virtually shake, in my opinion. If they're not wearing a seatbelt or doing otherwise, nothing wrong. That's suspicious, no doubt.

"She testified that she was glancing all around trying to figure out her surroundings, that's suspicious. She quickly transferred a container from underneath her [rear end] to her purse. And he didn't say she did it slowly or methodically. I find that to be considered furtive movement as well, also, at least in the preliminary hearing transcript, he seemed to try to do it. He seemed to see her do it hopefully without him seeing it and to, quote, he said, trying to conceal it from me seeing it. And she immediately tried to grab it and tried to shove it in her purse. That implies a quick movement hoping the officer wouldn't see.

"I'm sure every once in [a while]we might sit on something we didn't mean to or didn't know it was there, but it is still suspicious generally to be sitting on a container like that, especially for an adult who can feel what they're sitting on and notice something like that and see it before they sit on it.

"And the officer concluded that the container was likely to be contraband based on his significant training and experience, and also I believe it's clear the defendant was likely told that the car was going to be towed. Anyone who knows anything about towing

4

cars, the people have to get out before it gets towed. The car is searched for tow and so there's no dispute later about what was in it or if anything got stolen. So that container with the drugs in it or suspected drugs or paraphernalia would have been discovered by the police. So it's not an inevitable discovery issue so to speak but it is something that I believe the defendant most likely knew that if she didn't take that and put it into her purse, it would be sitting there in the car and the police would search that eventually and find it had the contraband in it.

"So, for all these foregoing reasons, the Court respectfully denies the defendant's motion to suppress the search in this matter."

Hamblin later agreed to a bench trial. The only witness testifying at the trial was Palmerin. Hamblin raised a continuing objecting to Palmerin's testimony about the events after the beginning of the car stop, based on the denied motion to suppress. The court overruled the objection. Ultimately, the court found Hamblin guilty of both charges.

The court ultimately sentenced her to a mitigated sentence of 10 months' imprisonment but released her on a 12-month probation term.

Hamblin timely appealed.

ANALYSIS

Hamblin argues the trial court erred in denying her motion to suppress. The only questions she raises before this court are whether the trial court correctly concluded that Palmerin had (1) reasonable suspicion of criminal activity to conduct the traffic stop; and (2) probable cause to believe the bag contained evidence of criminal activity.

5

*Standard of review*

When reviewing a district court's decision on a motion to suppress, this court utilizes a bifurcated standard. First, this court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. In reviewing the factual findings, this court does not reweigh the evidence or assess the credibility of witnesses. Second, this court will then review the district court's ultimate legal conclusions de novo. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). When faced with a motion to suppress evidence, the State bears the burden to prove that a search and seizure was lawful. *State v. Ton*, 308 Kan. 564, 568, 422 P.3d 678 (2018).

*The trial court did not err in finding there was reasonable suspicion for the traffic stop.*

Hamblin contends Palmerin's inability to articulate at what point he saw she was not wearing a seatbelt, combined with the fact that she was wearing the seatbelt at the start of the traffic stop, shows that there was not reasonable suspicion to justify the traffic stop. In response, the State argues that Palmerin's uncontested testimony established that Hamblin was not wearing a seatbelt when he originally saw her.

A traffic stop is a seizure under the Fourth Amendment to the United States Constitution, so it is subject to the constitutional requirement of reasonableness. *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). To justify this type of seizure, an officer needs only reasonable suspicion, which is "'a particularized and objective basis' for suspecting the person stopped" of breaking the law. *State v. Schooler*, 308 Kan. 333, 352, 419 P.3d 1164 (2018); see K.S.A. 22-2402 (codifying the search and seizure principles from *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). Reasonable suspicion is a lower standard than probable cause, and

6

"'[w]hat is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.' The totality of the circumstances standard 'allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.' A reviewing court must give 'due weight' to the factual inferences drawn by both the district court and law enforcement officers. [Citations omitted.]" *Schooler*, 308 Kan. at 352.

The Kansas Supreme Court has held that pre-stop observations of a traffic infraction establish an objectively reasonable justification to make a traffic stop, even if the stop is pretextual. *State v. Marx*, 289 Kan. 657, 662, 215 P.3d 601 (2009).

Kansas law requires that passenger car occupants who are 18 or older, "shall have a safety belt properly fastened about such person's body at all times when the passenger car is in motion." K.S.A. 2019 Supp. 8-2503(a)(1). Observing a seatbelt violation establishes reasonable suspicion to justify a traffic stop.

Hamblin asserts that the trial court should have discredited Palmerin's testimony that he observed her riding in the passenger seat without a seatbelt for two reasons: first, he could not articulate precisely when he observed the violation; and second, she was wearing a seatbelt at the beginning of the traffic stop. Yet the trial court heard Palmerin's testimony, assessed his credibility, and concluded the truth was "most likely" that Hamblin had put on her seatbelt between seeing the officers and the time of the stop. Hamblin essentially asks this court to reweigh the evidence or assess Palmerin's credibility, which it will not do.

Simply put, there is substantial competent evidence supporting the trial court's reasonable suspicion finding. Thus, the initial traffic stop was objectively reasonable under the Fourth Amendment, and we find no error in that aspect of the court's denial of the suppression motion.

7

*The trial court erred in finding the search of the red zipper bag was supported by probable cause.*

Hamblin also argues that the trial court erred in concluding that the search of the red zipper bag was constitutional. In response, the State argues that the probable cause plus exigent circumstances exception justified the search and that because "all of this transpired in a vehicle, exigent circumstances existed." As for probable cause, the State contends that the facts here are "remarkably-similar" and present "an identical warrantless search issue" as *State v. Howard*, 305 Kan. 984, 989, 389 P.3d 1280 (2017). And since the Kansas Supreme Court ultimately determined in *Howard* that the search was proper, the State asserts this court must hold the same.

*An exception to the warrant requirement applies to justify a warrantless search.*

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are per se unreasonable unless they fall within one of the "'specifically established and well-delineated exceptions'" to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); see *State v. Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018). The most commonly recognized exceptions to the warrant requirement include consent, search incident to lawful arrest, stop and frisk, probable cause plus exigent circumstances, the emergency doctrine, inventory searches, plain view, and administrative searches of closely regulated businesses. *State v. Ramirez*, 278 Kan. 402, 404-05, 100 P.3d 94 (2004).

Of these common exceptions, the State relies on the automobile exception, which is a subset of probable cause plus exigent circumstances. The automobile exception generally says that "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991); see *State v.*

*MacDonald*, 253 Kan. 320, 325, 856 P.2d 116 (1993) (police may search an automobile if there is probable cause to believe there is evidence of a crime in the vehicle). As the State also notes, the inherent "mobility" of an automobile supplies the exigent circumstances without the necessity of proving anything more. See *Howard*, 305 Kan. at 990. For purposes of this appeal, this court will assume, without deciding, that the probable cause plus exigent circumstances exception applies to these facts.

*Hamblin had a heightened expectation of privacy in her purse and the red zipper bag.*

"Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars." *Wyoming v.* Houghton, 526 U.S. 295, 303, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999). The United States Supreme Court has never adopted a rule establishing enhanced privacy protections for certain containers found in vehicles. But the Kansas Supreme Court has. It recognizes a "heightened privacy interest" in purses or similar containers when they are essentially attached to their owner. *State v. Boyd*, 275 Kan. 271, 283, 64 P.3d 419 (2003) (holding that an officer cannot "order a passenger to leave her purse in the car and thereby make it subject to search"); see *State v. Groshong*, 281 Kan. 1050, 1056-57, 135 P.3d 1186 (2006) (search of passenger's purse lawful because she made no attempt to retrieve it from vehicle *before* officer developed probable cause for a search).

So to begin, we find that Hamblin had a reasonable expectation of privacy in the contents of her purse. The same is true for the contents of the red zipper bag. By having the red zipper bag physically next to her at all times and moving the red zipper bag into her purse, even if just briefly, that action is enough to place the bag's contents under the "heightened privacy interest" of her purse. See *Boyd*, 275 Kan. at 283.

*The search of the red zipper bag was not supported by probable cause.*

"Probable cause to support a search can be established if the totality of the circumstances indicate there is a fair probability the place to be searched contains contraband or evidence of crime." *State v. Hubbard*, 309 Kan. 22, Syl. ¶ 4, 430 P.3d 956 (2018). "When determining whether probable cause exists, this court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts." *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004). This court views the totality of the circumstances from the perspective of an objectively reasonable police officer. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006).

The State relies on *Howard* to support its argument that probable cause existed in this case. So we will examine that case.

In *Howard*, the defendant was a driver in a vehicle pulled over for several observed traffic infractions, including that the passenger did not appear to be properly wearing a seatbelt. At the beginning of the traffic stop, one of the officers noticed that the passenger had reclined her seat. The officers learned the driver had an outstanding arrest warrant, so they asked him to exit the vehicle and performed a protective sweep of his seat. During that search, an officer saw a plastic baggie with a ripped-out corner in the center console. After placing the driver under arrest, the officers spoke with the passenger and learned she also had an outstanding warrant, so they removed her from the vehicle and searched the passenger seat area. During that search, an officer found a firearm concealed under a floor mat. The State later charged Howard with criminal possession of a firearm by a felon, ultimately securing a conviction.

On appeal, the Kansas Supreme Court affirmed this court's decision and the trial court's ruling that the probable cause plus exigent circumstances exception justified the

10

warrantless search that uncovered the firearm. 305 Kan. at 994-95. The court determined that three factors considered collectively supported the trial court's probable cause determination: (1) the officer's observation that the passenger had reclined her seat; (2) the officer's observation of a clear plastic baggie with a ripped out corner in the center console; and (3) the officer's training and experience that led him to believe people regularly package drugs using twisted off corners of clear plastic baggies. 305 Kan. at 990-94.

We find *Howard* to be easily distinguishable from this case. First, there was nothing suspicious about Hamblin when the officer approached her and told her to gather her things—unlike the modified plastic bag and the reclined chair in *Howard* which aroused suspicion. Although, the officer noted she was nervous, nervousness alone is not enough to justify a warrantless search.

Second, in *Howard*, the officer recognized a clear plastic bag with cut corners—a method known to be used by drug users—prior to searching the passenger area. This was not an innocuous object. It is the corners cut off the bag that tied it to drug usage. Were it just an empty clear plastic bag, the same kind of suspicion would not have aroused. See *State v. Jones*, 300 Kan. 630, 647-48, 333 P.3d 886 (2014) (intact plastic bag does not lead to reasonable suspicion, although plastic bag with corner cut off may rise to the level of reasonable suspicion).

Third, the officers in *Howard* developed probable cause during a lawful vehicle search incident to the driver's arrest, while here Palmerin had not searched any of the vehicle before he asked Hamblin to exit. Finally, finding contraband underneath a reclined seat and on the floorboard is significantly different than finding it in an opaque bag that the driver kept close to her at all times and gathered to take with her as she exited the vehicle. Finding that *Howard* is distinguishable, we turn to the factors considered by the court in this case.

11

The trial court identified four main factors that it said supported a probable cause finding:

- Hamblin's excessive nervousness, as evidenced by her visibly shaking and glancing around;
- Hamblin's attempts to conceal the bag from the officers, specifically by first sitting on the bag and then making a "furtive movement" by quickly moving it to her purse when asked to exit the vehicle;
- Palmerin's training and experience led him to believe the bag was of the type used to store illegal narcotics; and
- Hamblin knew the vehicle would be towed and likely searched, thus prompting her to bring the bag with her to avoid discovery.

Hamblin disputes the reasonableness of the inferences made from the available evidence and contends that the trial court incorrectly concluded that they individually or collectively amounted to probable cause. We find Hamblin's arguments persuasive.

*a.    Nervousness*

The Kansas Supreme Court has recognized that nervousness alone cannot form reasonable suspicion—and thus, is insufficient to form probable cause—but may support an inference of criminal activity when combined with other factors. See *State v. Moore*, 283 Kan. 344, 355-60, 154 P.3d 1 (2007) (relying on *State v. DeMarco*, 263 Kan. 727, 735-41, 952 P.2d 1276 [1998]). So Hamblin's nervousness alone does not significantly contribute to the probable cause analysis unless combined with another factor like furtive movements or officer training and experience in recognizing items used to transport drugs.

Hamblin contends that she was behaving as a normal person would under the circumstances—conceding her nervousness. But she asserts that her nervousness and looking around was understandable because the driver of the car she was in had just been arrested.

### 1. *Furtive movement*

As for the allegedly "furtive" movement, Hamblin asserts that she was simply complying with Palmerin's orders by collecting her belongings quickly and that he falsely attributed her actions as an attempt to conceal something from him.

Returning to the State's reliance on *Howard*, the officer in *Howard* noticed the reclined seat immediately at the beginning of the traffic stop and then observed other evidence that contributed to the probable cause analysis. The vehicle search was essentially separated between the initial search of the driver's seat after his arrest—which revealed the baggie with a torn corner—and then the second search of the passenger seat after the passenger's arrest. Because the other two factors relied on by the *Howard* court depended on the officer's observations during the first search, the development of those added facts bolstered the probable cause determination in that case.

Here, nearly all the facts leading to Palmerin's development of probable cause coincide. Police arrested the driver for driving without a license and the car had no valid registration, but importantly, Palmerin never testified that the officers would search the rest of the vehicle for contraband up to the point Palmerin asked Hamblin to exit the vehicle. Similarly, the driver's arrest would not automatically lead an objectively reasonable officer to believe another crime was occurring, let alone possession of illegal narcotics by the passenger. Thus, Palmerin apparently did not believe the vehicle contained evidence of any other crimes, so it was not a reasonable inference that

13

Hamblin's zipper bag contained illegal contraband simply because she was concealing it and moved it quickly to her purse when asked to exit.

Hamblin was sitting on the zipper bag both before and during the traffic stop, a clear indication that it was hers and she was trying to keep it private. Palmerin testified that he did not witness any furtive movements by Hamblin that would suggest she placed the bag underneath her immediately before or during the traffic stop. Hamblin had a right to gather her belongings from the vehicle when asked to exit and quickly complying with that request does not support a reasonable inference that she possessed any illegal contraband. "Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times." *Houghton*, 526 U.S. at 308 (Breyer, J., concurring). We do not believe it is reasonable to infer that by taking something she was sitting on and putting it in her purse as she gathered her belongings, Hamblin was actively trying to conceal anything from Palmerin anymore than she would try to conceal personal items placed in her purse from anyone. When Hamblin was told to gather her belongings, there was no probable cause to believe there were any drugs in the car. And her actions complying with Palmerin's request could not lead to an inference she was carrying drugs. See *Boyd*, 275 Kan. at 283.

### 2. *Officer's training and experience in recognizing packaging of illegal narcotics*

Hamblin next asserts that Palmerin's experience dealing with drugs and illegal contraband were not enough to give him specialized knowledge that the zipper bag contained evidence of any crime. She points out that Palmerin was more concerned that she was sitting on the bag, rather than its appearance; that she also moved her phone from the same area into her purse; and that it took her less than a minute to gather her belongings. In response, the State again cites *Howard* and contends that Hamblin's

14

nervousness strengthened Palmerin's belief from his training and experience that the zipper bag was of the type used to package illegal narcotics.

To be more specific, Palmerin testified that he was a member of a special policing unit whose purpose was to conduct car stops and locate violent criminals. Through that experience, Palmerin "got a lot of narcotics off the streets" and had encountered individuals storing drugs "in their pockets, Crown Royal bags, small zip bags, sunglass cases, [and] digital camera cases." As a result, the State argues that Palmerin's experience related to these observations is a factor that can help establish probable cause.

Both the Kansas Supreme Court and the United States Supreme recognize that a court can consider an officer's training and experience as a factor in determining whether the totality of the circumstances supports a probable cause finding. *Howard*, 305 Kan. at 993; see *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (officers may draw on their own experience and specialized training to make reasonable inferences based on available information); *United States v. Ortiz*, 422 U.S. 891, 897, 95 S. Ct. 2585, 45 L. Ed. 2d 623 (1975) (officers can draw on knowledge and prior experience in determining whether probable cause exists to search a vehicle)*. In Howard*, the otherwise unsuspicious plastic bag became suspicious when the corner was cut off. This hinged on the officer's testimony that in his experience plastic bags with ripped corners are used to transport marijuana. *Howard*, 305 Kan. at 993.

But when officers cite to normal items of everyday living as used for storing illegal drugs and their mere existence or their concealment justify a search, the officers stand on an unstable foundation. There was nothing independently suspicious about the red bag. There was no modification that would point to its use for drug transport as with the plastic bag in *Howard*. Although the officer may have seized drugs from small zip bags in the past, how many times has he encountered someone with small zip bags that did not have drugs? Or more to the point here, how many times has he seen women

15

carrying small zippered bags in their purses or on their person that had nothing to do with the transportation of illegal drugs?

The use of innocuous objects to support probable cause can subject innocent people to unwarranted police action. See *State v. Chapman*, 23 Kan. App. 2d 999, 1010, 939 P.2d 950 (1997) ("The point is not that drug traffickers will often exhibit such behavior, but that many innocent motorists exhibit precisely the same behavior."). Although Palmerin may be an expert at finding narcotics in Kansas City, Kansas, he does not present this information in terms of a "hit rate." *State v. Arceo-Rojas*, 57 Kan. App. 2d 741, 781, 458 P.3d 272 (2020) (Arnold-Burger, C.J., dissenting), *rev. granted* ___ Kan. ___ (August 27, 2020). Without such information, it is impossible to know the accuracy of the associated inferences by law enforcement. As now Chief Justice Luckert pointed out in her dissenting opinion in *State v. Boggess*, 308 Kan. 821, 836, 425 P.3d 324 (2018), "[o]ne often uses such a bag to store personal items and doing so in a zippered bag suggests an effort to protect one's privacy and the security of the items in the bag."

Here Hamblin concealed the zippered bag under her bottom—even before the car was stopped—and then quickly transferred into her purse. This made clear her sole control over the property and her desire to keep it private as she was gathering her personal items to exit the car. We find that it was not a reasonable inference that the small red zipper bag contained illegal contraband or that sitting on and then moving it to her purse was a suspicious furtive movement. As a result, officers had no basis to join furtive movements and officer experience with Hamblin's nervousness to create probable cause for the search of her purse and the red bag.

*b. Inevitable discovery*

Although the State never raised inevitable discovery as an exception to justify the search, the trial court somewhat relied on this factor as a basis for its probable cause finding. According to the trial court, Hamblin "most likely knew" that leaving the zipper bag in the car would lead to the police finding it eventually through an inventory search.

Despite the parties minimally addressing this factor in their briefs, it was not a reasonable inference. First, the Kansas Supreme Court has held that a vehicle's passenger has a right to bring their belongings when ordered to leave a vehicle. See *Boyd*, 275 Kan. at 283. So treating Hamblin's decision to remove her belongings from the vehicle as evidence of probable cause that she was trying to conceal potential contraband undercuts that precedent and should not be encouraged. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (recognizing duty to follow Kansas Supreme Court precedent absent an indication that the Kansas Supreme Court is departing from its previous position).

The State also presented no evidence to show that Hamblin knew the officers would search the vehicle upon her exit. Palmerin testified inconsistently on this point, stating at the preliminary hearing that he assumed he had told her the car was being towed but could not recall his exact words. Then again at the suppression hearing, Palmerin said he did not recall specifically telling Hamblin that he planned to have the vehicle towed, "but in order for [him] to tow the car, she would need to exit the vehicle." And since Palmerin's testimony established the only apparent crimes at that point were already complete—i.e., police had already arrested the driver for not having a license and Hamblin would purportedly be receiving a citation for the seatbelt violation—it would not be reasonable to infer that Hamblin believed she needed to prevent any evidence from being seized. As a result, this factor was not a reasonable inference based on the available evidence.

In sum, considering all of these factors together, as this court must do, we find that the trial court erred in concluding that there was probable cause for the search. Although realizing Hamblin was sitting on something that she tried to quickly move to her purse when asked to exit the vehicle supports a reasonable inference that she was trying to conceal that item, it is a quantum leap to infer under these facts that Hamblin was attempting to conceal drugs from a police officer. This was a simple traffic stop for expired tags and no seat belt and there was nothing to suggest the presence of drugs in the car. Most people are nervous during traffic stops and nothing about the traffic stop or the appearance of the red zipper bag suggested crimes other than the already-completed traffic infractions were occurring. The facts known to the officer support an equally likely, if not more likely, inference that Hamblin was acting as most people would under the circumstances by complying with the officer's request to exit the vehicle and quickly gather her personal belongings. The trial court erred in denying Hamblin's motion to suppress as there was no probable cause for the search of the red zipper bag.

Reversed and remanded with directions.